66159. THOMPSON ENTERPRISES, INC. v. COSKREY et al.

DEEN, Presiding Judge.

Thompson Enterprises, Inc., a residential builder, appeals from a jury award totaling $31,085 in favor of appellees, Mr. and Mrs. Coskrey, in an action in which appellees alleged negligence, fraud, and breach of contract and of warranties.

A real estate agent showed the Coskreys a number of houses, including one in the Holly Springs subdivision in Cobb County, which they decided they wanted to buy. The agent informed them that this particular house had been sold but that she would introduce them to a builder who could duplicate the house for the same price in a nearby subdivision, Johnson's Landing, which was owned by that builder. After the Coskreys had talked with a Mr. Robinson, who was introduced as a partner in Thompson Enterprises, a contract was signed and excavation was begun on the lot which Robinson and the agent had shown to the Coskreys.

Almost immediately upon commencement of the excavation, and again a number of times during the course of construction,

appellees noticed water standing both in the yard and around and within the excavated area but were told by Robinson that it was due to unusually heavy rains. Meanwhile, unknown to appellees, a Cobb County building inspector ordered construction halted on the site until a soil test was obtained. Robinson arranged for a test, the net result of which was that the chief project engineer for the soil testing firm visited the site and informed Robinson that seepage from live springs underlying the entire lot would cause serious and permanent problems unless the house was located in another area of the lot and unless alternative, more expensive, construction methods were employed. Robinson discontinued the initial excavation and began again elsewhere on the lot, telling the Coskreys that the move was made so as to avoid the necessity of diverting a creek that flowed through the lot. He told them nothing of the visits from the building inspector and the soil experts, and, in disregard of the soil expert's warnings, used on the new construction the conventional construction methods with which he had begun. When the Coskreys remarked on standing water seen in and around this second site, Robinson told them that proper drainage would be established when landscaping was completed.

When the Coskreys' lease on their rented quarters expired, they moved into the substantially completed house several days prior to the closing, even though there were several obvious defects or deficiencies and other matters about which they had questions. In order to move in, the Coskreys signed an "occupancy agreement" which contained "as is" language. When they questioned Larry Thompson, the building firm's president, they were assured that this was mere stock language, that the purpose of the agreement was only to enable Thompson to fulfill the terms of his financing arrangements, and that if they would prepare a list of defective or non-complying items, all problems would be corrected promptly. At the closing the Coskreys received from Thompson a homeowner's warranty covering a number of areas; and a stipulation was added to the sales agreement guaranteeing correction for twelve months of any leakage or seepage problems. Appellees were also requested at the closing to sign an acceptance agreement which stated that no further work needed to be done on the property. After again being assured that this language was merely for the mortgage lender's benefit, and that all problems would be taken care of, the Coskreys signed.

During rainstorms that occurred shortly after the Coskreys moved into the house, there were several inches of standing water in the basement, garage, and yard. The roof began to leak, and the driveway developed a large crack. In response to the Coskreys' repeated phone calls and visits to Thompson's office, caulking was

added to the windows and flashing to the roof, touch-up interior painting was done, and two loads of dirt were dumped in the driveway. Some months passed, during which Thompson failed to return the Coskreys' phone calls concerning new or continuing problems, and a Thompson repair man who had telephoned and promised to take care of remaining problem areas failed to appear. The Coskreys then sought arbitration. In his pre-hearing statement Larry Thompson denied all liability, citing the occupancy agreement and acceptance agreement. The arbitrator entered an award holding Thompson responsible for some but not all of the cited defects.

In the interval between the hearing and the award, standing water in the basement reached the heating/air-conditioning system and caused an expensive furnace component to crack. Carpet in the "great room" was also badly water-damaged. The Coskreys contacted reputable contractors who inspected the various items and estimated that the total cost of correcting defects in the roof, driveway, "great room," garage, and heating and air-conditioning system,[1] and of providing adequate drainage for the house and yard, would cost approximately $25,000. These contractors testified at trial that by the time of trial some of these costs would have increased by 10 to 15 percent.

The Coskreys rejected the award, which of course covered neither carpet nor furnace, and brought the action below, seeking actual damages of $35,000 and attorney fees of $15,000 on the breach of contract and warranty count; on the negligence count $35,000 and costs, plus $20,000 in punitive and general damages; and on the fraud count, $35,000 plus $15,000 in attorney fees. The jury awarded $19,085 in damages on the first count, $2,000 in damages and $10,000 in attorney fees on the second count, and nothing on the fraud count. After his motion for a new trial was denied, Thompson appealed, enumerating as error the trial judge's instructing the jury on litigation costs and failing to direct a verdict in appellant's favor on the negligence count. He also enumerates as error the court's overruling his motion for a new trial on the breach of warranty count, alleging that the award was excessive and without sufficient evidence to support it. Appellees have moved for damages in the amount of 10 percent of the award below, alleging that the appeal is frivolous and is

---

[1] The Coskreys had contracted with Thompson for installation of a larger furnace than that included in the routine specifications, and had agreed to pay an additional sum to cover it. The furnace contractor found that the smaller unit had actually been installed and a plate altered to make it appear that it was the unit for which appellees had contracted. The contractor testified that the alteration voided all manufacturer's warranties.

simply an effort to inconvenience appellees and delay paying them what they are due. *Held:*

1. Appellant contends that the trial court erred in instructing the jury regarding the award of expenses of litigation. OCGA § 13-6-11 (Code Ann. § 20-1404) disallows these expenses as a general rule but provides that "the jury may allow" them "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." See *Bayliner Marine Corp. v. Prance,* 159 Ga. App. 456, 461 (283 SE2d 676) (1981). If there is a bona fide controversy between the parties as to liability, the issue of costs cannot be submitted to a jury, *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 524 (191 SE2d 317) (1972), but it is necessary for the plaintiff to show only one of the three conditions set forth in the statute in order to bring the case within the statute's ambit. *Franchise Enterprises, Inc. v. Ridgeway,* 157 Ga. App. 458 (278 SE2d 33) (1981).

In the instant case appellees "specially pleaded and . . . made prayer" for litigation expenses in their complaint. The record reveals that appellees produced at trial at least some evidence that would support a finding of conduct amounting to bad faith on appellant's part, as well as of the other two statutory conditions. There is unrefuted evidence not only that appellant failed and refused to correct the major defects and deficiencies when appellees attempted to call them to his attention and even failed to respond to their repeated efforts to communicate with him by telephone and in person, but also that appellant flatly disclaimed all responsibility for such problems. Such conduct could constitute evidence to support appellees' claims that there existed no bona fide controversy as to appellant's liability, but rather that appellant was merely "stonewalling," as contemporary idiom has it — that is, that appellant was attempting to utilize what this court has denominated "the 'so sue me' ploy." *Buffalo Cab Co. v. Williams,* supra at 524.

"There being some evidence authorizing the award of attorney fees, this court cannot say as a matter of law that there was a reasonable defense to . . . [appellees'] claim . . . It was for jury determination as to whether or not there was a bona fide controversy so as to deny attorney fees..." *Jackson v. Brinegar, Inc.,* 165 Ga. App. 432, 436, 437 (301 SE2d 493) (1983). Moreover, " '[i]t is not error to give . . . [a jury] instruction where there is any evidence, however slight, on which to predicate it. [Cit.]' " *Butler v. Anderson,* 163 Ga. App. 547, 548 (295 SE2d 216) (1982); *Morse v. MARTA,* 161 Ga. App. 405 (288 SE2d 275) (1982). The court below did not err in instructing the jury on the issue of expenses of litigation.

2. The trial court did not err in denying appellant's motion for a directed verdict. OCGA § 9-11-50 (Code Ann. § 81A-150) provides for the direction of a verdict "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict . . ." The Supreme Court of this state has held that " 'it is error to direct a verdict unless the evidence *demands* the particular verdict and fails to disclose *any* material issue for jury resolution.' " *North Ga. &c. Assn. v. Vandergrift,* 239 Ga. 755, 761 (238 SE2d 869) (1977); see also *Talmadge v. Talmadge,* 241 Ga. 609 (247 SE2d 61) (1978). "Only where there is no conflict [in the evidence] and a verdict is demanded as a matter of law it is error for the trial court to fail to direct a verdict. [Cit.]" *Weatherspoon v. K-Mart Enterprises,* 149 Ga. App. 424, 427 (254 SE2d 418) (1979); *Marriott Corp. v. American Academy of Psychotherapists, Inc.,* 157 Ga. App. 497, 498 (277 SE2d 785) (1981).

In the instant case appellant contends that the instances of defective or non-complying construction were patent defects which were known to appellees and therefore present no cause of action; and, moreover, that a verdict for appellant is demanded on this issue. There is unrebutted evidence, however, that such major defects as the leaky roof, the damaged and non-complying furnace/air-conditioner, and the water-damaged carpet did not manifest themselves until after occupancy and closing. Moreover, the presence of the springs, which caused seepage into the basement and garage and damage to the driveway and carpet, was concealed from appellees by appellant, who did not mention the soil experts' findings and who, in response to appellees' question about the standing water, represented that it was due to unusually heavy rains. Despite appellant's assertions to the contrary, it is thus apparent that the major bones of contention — and actually the ultimate reason that appellees filed suit — were latent defects rather than patent ones. Compare *P.B.R. Enterprises v. Perren,* 243 Ga. 280 (253 SE2d 765) (1979); *Grant v. Aulicky,* 161 Ga. App. 817 (290 SE2d 107) (1982). In *Worthey v. Holmes,* 249 Ga. 104, 106 (287 SE2d 9) (1982), the Supreme Court held that ". . . neither caveat emptor nor merger by deed is a viable defense by a builder-seller against a homeowner's tort-negligence and breach of contract claims seeking recovery for latent building construction defects about which the purchaser-homeowner did not know, and in the exercise of ordinary care would not have discovered, which defects either were known to the builder-seller or in the exercise of ordinary care would have been discovered by him."

It is clear that in the instant case the evidence did not demand a

verdict for appellant. The trial court properly denied the motion.

3. There was presented at trial evidence of the cost of repairing or replacing the roof, driveway, garage, carpet, and heating/air-conditioning system, and of treating the underlying springs so as to prevent seepage. The evidence was in the form of estimates by six reputable independent contractors who had visited the premises; these estimates totaled $24,682, and the jury awarded a total of $21,085 ($19,085 on the contract claim), in addition to an award for attorney fees. Unless a jury verdict is palpably unreasonable or excessive, or the product of bias, it will not be disturbed on appeal. OCGA § 13-6-4 (Code Ann. § 20-1411); *Piedmont Builders, Inc. v. Fullerton,* 157 Ga. App. 126 (276 SE2d 277) (1981); *Hogan v. Olivera,* 141 Ga. App. 399 (233 SE2d 428) (1977). See also *Smith v. Milikin,* 247 Ga. 369, 372 (276 SE2d 35) (1981). In this case the amount awarded is less than that shown by the evidence and therefore cannot be said to be palpably unreasonable or excessive, nor is there any showing that it was influenced by bias. The trial court did not err in sustaining the verdict and in overruling appellant's motion for a new trial on this basis.

4. Appellees have filed a motion for ten percent (10%) damages pursuant to OCGA § 5-6-6 (Code Ann. § 6-1801), citing as grounds for their motion "Thompson's arrogance and continued refusal to honor its legal commitments, and the frivolous legal and factual nature of the instant appeal . . ." The purpose of the cited Code section, which permits the award of damages "[w]hen in the opinion of the court the case was taken up for delay only," is to discourage the filing of frivolous appeals. *Dickey v. Millen Fertilizer Co.,* 18 Ga. App. 629 (89 SE 1098) (1916).

In *Moore v. Smith Machine Co.,* 4 Ga. App. 151, 154 (60 SE 1035) (1908), this court set forth the procedure to be followed in determining whether an award of damages is appropriate: "[W]hen a motion for damages is filed, we will carefully examine the record and will pass upon the motion in the light of the entire history of the case as there presented. If after reviewing the whole matter we believe that the plaintiff in error is presenting a bona fide contest over a colorable matter, though his view of the law may not in fact be well founded, or that he is seeking a ruling upon an open or doubtful question, damages will be refused. But when the record discloses that the plaintiff in error has no just case, that no new question of law is involved, and the record is full of those things which every judge and every lawyer recognizes as indicia of an attempt to fight merely for time, justice demands that we overcome any personal hesitancy that we may have, and that we add an award of damages to the judgment of affirmance." See *Prattes v. Southeast Ceramics, Inc.,* 132 Ga. App.

584, 586 (208 SE2d 600) (1974). In the instant case we recognize the "indicia" of which Judge Powell spoke in *Moore,* supra. We therefore "overcome . . . [our] personal hesitancy . . . and . . . add an award of damages to the judgment of affirmance."

*Judgment affirmed with direction. Banke, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED SEPTEMBER 8, 1983 —
REHEARING DENIED SEPTEMBER 28, 1983.

*Stephen C. Steele, Hylton B. Dupree, Jr., Mark A. Johnson,* for appellant.

*Frank E. Jenkins III, Charles W. Whitney, Jesse P. Schaudies, Jr.,* for appellees.