76123. SOUTHERN RAILWAY COMPANY v. CROWE.
(366 SE2d 846)

DEEN, Presiding Judge.

Madeline Crosby Crowe brought suit against Southern Railway Company to recover damages to real property which were caused by a fire. The evidence showed that Southern Railway's employees were working on the railroad's tracks in the vicinity of appellee's property. They were operating a rail-cutting machine which generated sparks.

One of the sparks started a fire which the work crew could not extinguish, and the fire quickly grew out of control. It burned 83 acres of Mrs. Crowe's property, which contained timber of various sizes and ages and 20,000 two-year-old seedlings planted throughout the tract.

The railroad denied liability for the damage. When the case came to trial, however, the railroad admitted liability for the damage and the only issues for trial were the amount of its liability and whether Mrs. Crowe was entitled to recover for her claims for punitive damages, attorney fees and litigation costs. A jury verdict awarded her $18,000 for the loss of her timber, $7,500 for the cost of reforestation of the 20,000 seedlings and incidental damage to the property, $13,500 in attorney fees and $1,562 for litigation expenses. On appeal, Southern Railway contends that the plaintiff's verdict for both damages for the loss of timber and the costs of reforestation cannot stand because it reflects an impermissible double recovery, and that the trial court erred in permitting the jury to impose attorney fees and costs, pursuant to OCGA § 13-6-11.

1. The court charged the jury that the damages that the plaintiff sustained, if any, "is the difference in the value of the land immediately before the fire and the value of the land immediately after the fire, that is, how much less was the land worth after the fire than before, having reference to the injury done by the fire. You may determine this fact by ascertaining the value of the timber before, and then determine the value of the timber after the fire, and by other facts and circumstance proven in the case on the question of damages. The true measure of damages in a case of this kind is the diminution in the market value of the realty unless the value of the trees at the time and place of their being felled or being burned, plus the incidental damages to the realty, exceeds the diminution in market value of the land. In which event the plaintiff in this case is entitled to recover the higher measure of damages." The court went on to charge: "As a matter of law, I have ruled that the plaintiff cannot recover the cost of reforestation to the entire 83 acre tract of land, or for the cost to reforest all of the property that was burned because . . . the law requires that . . . juries figure the net loss of the value of the timber . . . Now incidental damage to property is an item you may consider and determine . . . which the plaintiff contends was 20,000 seedlings." The court went on to instruct the jury that it was to determine if there was damage to the seedlings, and the number destroyed, if they were destroyed. "You determine their value, and you determine whether or not . . . they were of such tender years and age that they had no immediate market value. Then you may consider whether or not to place value on such seedlings, based on the evidence in the case, due to their age, the cost of reforestation of that amount of seedlings based upon . . . the amount of acreage that such seedlings

would occupy to reforest."

Appellant does not contend that the damage charge for determining the amount of damage sustained to the property by determining the value of the timber before and after the fire was erroneous, but contends that it was error to deny its motion in limine, to prevent the jury from hearing the testimony of the costs of reforestation, as was the denial of its motion for a directed verdict on this issue and the jury charge on the cost of reforestation of the 20,000 seedlings recoverable as incidental damages.

Plaintiff's experts testified that the 83-acre tract was covered with trees of various ages and sizes and that, while the 20,000 seedlings had no market value as they were only two inches in diameter, they would enhance the market value of the property. They occupied approximately 20-30 acres of the tract. One of the experts testified that in 25 years, the normal crop rotation period, they would have a value of $72,996, which, when divided by 25 and then allowing for 2 years growth, gave them a current value of $5,840. Both experts testified as to the cost of reforesting the entire tract and gave a breakdown of costs for replanting the 20,000 seedlings. These costs were based on an estimate of 600-700 trees per acre and a cost of $150-160 per acre.

The jury instruction permitted it to assign a value to the seedlings along with the cost of replanting them. The jury was very carefully instructed that the plaintiff could not recover for the reforestation of the entire tract. To permit such a recovery would be a double recovery for the landowner, as the costs of replanting after timber has been removed is a part of normal business costs which are borne by the landowner. See *Henderson v. Easters*, 178 Ga. App. 867 (345 SE2d 42) (1986). To permit such a recovery for the seedlings is a different matter. The jury was charged that the value of the land was measured by the value of the timber before and after the fire. The seedlings' only value was that they enhanced the value of the land, but only as to their future value as timber. In order to make the plaintiff whole after her land was damaged by fire, their replacement became an item of incidental damages in the same way that restoring a fence becomes an item of incidental damages. See *Central R. &c. Co. v. Murray*, 93 Ga. 256 (20 SE 129) (1893). Even the defendant's own expert, in response to a hypothetical question, responded that if a good crop of seedlings was burned he would expect to be paid for it. We find no merit in appellant's enumerations on this issue.

2. Southern Railway argues that since there existed a bona fide controversy as to the amount of damages, the jury was precluded from considering attorney fees and litigation costs. The evidence reveals that the appellant railroad consistently denied all liability for the damage to appellee's property up until the trial of the case, at

which point it admitted no bona fide controversy existed as to that liability.

In *Delta Air Lines v. Isaacs*, 141 Ga. App. 209 (233 SE2d 212) (1977), we held that the trial court properly presented the question of attorney fees to the jury pursuant to OCGA § 13-6-11. "A party may resist settlement of a claim without fear of future liability for attorney fees if the resistance is predicated upon a 'bona fide controversy.' [Cit.] However, where a defendant has disclaimed *all* liability prior to litigation, the raising at trial of a dispute as to the amount of liability, without more, will not satisfy the bona fide controversy requirement. [Cit.]" Id. at 211 (3).

The court discussed the rationale for what we perceive to be the correct holding in the case sub judice in *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. 747 (266 SE2d 531) (1980), in which we stated: "[T]he question of whether attorney fees are authorized for stubborn litigiousness should focus on whether defendant's resistance of the claim was bottomed on a bona fide controversy or dispute, since the absence of such is the essence of the attorney fee award for stubborn litigiousness. [Cits.] We can perceive that there may be cases wherein there is a bona fide controversy and the plaintiff has insisted on far more damages than he was finally determined to be worth, *and yet the defendant, despite the fact that there is a genuine controversy, has still been guilty of 'wanton or excessive indulgence in litigation' beyond that demanded by the nature of the controversy* [cit.], or the defendant may have treated the claim or conducted the litigation itself in bad faith [cit.]. In such a case, although there may indeed be 'great disparity in the verdict and demand' [cit.], which would certainly indicate that there had been a bona fide controversy at least as to the amount of liability, the defendant may still have been stubbornly litigious within the meaning of [OCGA § 13-6-11] [cits.]. *The defendant may, for example, have expended much cantankerous, unnecessary litigation on a denial of liability as to which there is found to have been no real dispute or bona fide controversy, as further evidenced by the fact that at trial he admits liability and challenges only the amount of liability* [citing *Delta Air Lines v. Isaacs*, supra; etc.]" (Emphasis in original removed; emphasis supplied.) Id. at 753-754. See also *Beaudry Ford, Inc. v. Bonds*, 139 Ga. App. 230 (228 SE2d 208) (1976), in which this court rejected Beaudry Ford's argument that a dispute over the amount of liability would create a genuine dispute sufficient to ameliorate any claim for damages under OCGA § 13-6-11 when all liability has been intractably denied, stating: "The defendant steadfastly denied liability and therefore it cannot raise the amount of damages as a genuine controversy." Id. at 231. The fact that the jury's award reflected the amount asserted by Beaudry Ford rather than the amount demanded by the plaintiff was

held to be an "inapt" rationale for denying attorney fees to the plaintiff. Id.

The evidence here shows "that there existed no bona fide controversy as to appellant's *liability*, but rather that appellant was merely 'stonewalling,' as contemporary idiom has it — that is, that appellant was attempting to utilize what this court has denominated 'the "so sue me" ploy.' [Cit.]" (Emphasis supplied.) *Thompson Enterprises v. Coskrey*, 168 Ga. App. 181, 184 (308 SE2d 399) (1983). Thus, there was evidence to support the award of attorney fees for appellant's stubbornly litigious behavior and the unnecessary trouble and expense appellant caused appellee by its denial of any liability for the fire damage to appellee's property.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED MARCH 7, 1988.

*Randall A. Jordan, Mark J. Bujold*, for appellant.
*Jack Hutto, Karen M. Krider*, for appellee.