## A99A0547. KLINGSHIRN et al. v. McNEAL.
(520 SE2d 761)

Pope, Presiding Judge.

Carol McNeal brought an action against Mike and Sherri Klingshirn and the Klingshirns' contractor, David McClure, for damages resulting from the removal by McClure of trees from McNeal's land. Following a bench trial, the court in a thorough order awarded damages in favor of McNeal and against the Klingshirns who now appeal.

The court found that McNeal and the Klingshirns owned adjacent property and that the portion of McNeal's property immediately adjacent to the Klingshirns' was outside a fence that McNeal had constructed on her property at some time in the past. Mike Klingshirn hired McClure to cut and remove certain trees on his property, and the court found that Klingshirn erroneously told McClure to cut all the trees up to the fence. McClure removed the trees as instructed, including eight loblolly pine trees located on McNeal's property. The court found that Klingshirn's error was his good faith misunderstanding concerning the exact location of the property line when he instructed McClure what trees to cut.

At the close of McNeal's case, the court granted McClure's motion for involuntary dismissal on the ground that McNeal failed to show any right to relief against him. McClure remained a third-party defendant of the Klingshirns' claim for indemnification. Two weeks after trial, the court issued its final order finding the Klingshirns liable for trespass resulting in damage to realty in the amount of $9,800 plus court costs.

1. The Klingshirns first contend the court erred in denying their request for involuntary dismissal on liability. In granting McClure's motion the court held, "The evidence produced by the plaintiff, with all reasonable deductions therefrom, failed to show a claim against the defendant David McClure." The Klingshirns assert that because the court granted McClure's motion, they could not be liable as a matter of law because the trespass claim against them was dependent on a trespass claim against McClure, i.e., the person who directed the cutting cannot be held liable without a finding of the actual perpetrator's liability. The Klingshirns rely on *Pickron v. Garrett*, 73 Ga. App. 61 (35 SE2d 540) (1945).

But McClure was a contractor who performed his work according to the instructions he was given.

> [W]here a contractor who does not hold itself out as an expert in the design of work such as that involved in the controversy, performs its work without negligence, and the work is approved and accepted by the owner or the one who contracted for the work on the owner's behalf, the contractor

is not liable for injuries resulting from the defective design of the work.

*David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990). See also *Groves v. City of Atlanta*, 213 Ga. App. 455, 457 (1) (444 SE2d 809) (1994) (public works project); *Jasper Constr. Co. v. Echols*, 198 Ga. App. 127, 128 (400 SE2d 660) (1990) (same). Instead, the contractor's employer is liable. Id.; OCGA § 51-2-5. Further, "an unintentional and nonnegligent entry onto another's land does not automatically subject an individual to liability even though the entry causes harm to the possessor. *Brand v. Montega Corp.*, 233 Ga. 32 (209 SE2d 581)." *C. W. Matthews Contracting Co. v. Wells*, 147 Ga. App. 457, 458 (1) (249 SE2d 281) (1978).

The court's dismissal of the claims against McClure was consistent with a finding that McClure performed the contract without negligence at Klingshirn's direction, and that as a result he entered McNeal's land in an unintentional and nonnegligent manner. This finding does not mean that the trespass did not occur or that the Klingshirns are not liable for having directed McClure to cut the trees. *Pickron v. Garrett* is distinguishable in that it did not involve an employer/contractor relationship.

2. The Klingshirns contend the court's judgment was contrary to its ruling at the close of McNeal's case dismissing any claim for damages under a theory of trespass. However, after the court's ruling, counsel for the Klingshirns urged the court to consider additional case law before deciding what types of damages were recoverable, and the court agreed to look at the matter more closely and stated that its rulings were subject to further research. The written order on the motions made at the end of McNeal's case indicated that the court was reserving ruling on the Klingshirns' motions. We see no error.

3. The Klingshirns assert there was no competent evidence to support the damage award.

If the owner sues upon the theory of a trespass to the realty, the measure of damage is the diminution in the market value of the real estate, unless the value of the trees at the time and place of their being felled, plus any incidental damage to the land itself, exceeds the diminution in the market value of the realty[,] in which event the higher measure is allowable.

*Milltown Lumber Co. v. Carter*, 5 Ga. App. 344, 345 (2) (a) (63 SE 270) (1908). Accord *Western &c. R. Co. v. Tate*, 129 Ga. 526, 531 (5) (59 SE 266) (1907); *Southern R. Co. v. Crowe*, 186 Ga. App. 244, 245-

246 (1) (366 SE2d 846) (1988).[1]

The court heard evidence from McNeal on the diminution in the value of her land, expert testimony concerning the value of the lost trees, and evidence of incidental damages including the cost to remove the stumps and related work. The court chose to award the value of the lost trees plus incidental costs after determining that those damages exceeded the diminution in value of the property.

The Klingshirns argue that the damage calculation cannot be performed without evidence of the diminution in value and that McNeal's evidence on this point was so inconsistent that it cannot be considered. "The testimony of a witness that he is familiar with the value of the item in question is sufficient foundation to allow evidence as to value." *Varnedoe v. Singleton*, 154 Ga. App. 332 (268 SE2d 387) (1980); OCGA § 24-9-66. Findings by the court after a non-jury trial "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52 (a). " 'Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them.' " *Maynard v. State of Ga.*, 217 Ga. App. 344, 346 (457 SE2d 253) (1995).

On the first day of trial McNeal failed to give any testimony regarding diminution in value. McNeal closed her case that day, but the subsequent motion hearing and lengthy discussion about damages led the court to grant McNeal's request to reopen the evidence. The case was continued for two months, and upon reconvening, McNeal testified to a loss in value as a result of the loss of trees of between $4,000 and $5,000. The fact that she had more information about the value is attributable to the two months of intervening time.

4. The Klingshirns also urge that there was no evidence of the value of the trees at the time and place of being felled as required by *Milltown Lumber Co. v. Carter*. Although two experts testified for the plaintiff about the value of the trees, the Klingshirns argue the experts testified about the wrong type of value, i.e., the replacement value and the shade tree value, rather than the timber value at the time the trees were cut. Compare *Southern R. Co. v. Crowe*, 186 Ga. App. at 245 (1) (timber value); *Ga. R. &c. Co. v. Flynt*, 93 Ga. App. 514, 524 (6) (92 SE2d 330) (1956) (replacement costs are for buildings, fences and other improvements); *Louisville &c. R. Co. v. Koh-*

---

[1] Compare OCGA § 51-12-50, which provides the measure of damages for conversion of timber, but not trespass to real property. *Holcombe v. Jones*, 197 Ga. 825, 832-833 (5) (30 SE2d 903) (1944). See also *McConnell Bros. v. Slappey*, 134 Ga. 95, 103-106 (8) (67 SE 440) (1910); *Folds v. Reese*, 140 Ga. App. 291, 292 (2) (231 SE2d 808) (1976); *Milltown Lumber*, 5 Ga. App. at 344-345 (1)-(3). But see *Minor v. Fincher*, 206 Ga. 721, 733 (6) (58 SE2d 389) (1950).

*lruss*, 124 Ga. 250 (52 SE 166) (1905) (value of trees goes only to diminution in property value).

Edward Macie, an employee of the United States Forest Service, was qualified as an expert in the field of urban forestry, which he defined as "the care of a multiple system of trees . . . for the benefit that they serve society, particularly in an urban community." Macie had experience determining the value of trees growing in urban and suburban environments. He was asked to conduct an appraisal of the value of the trees removed from the property. He made an appraisal of the trees "based on species, their size, their condition and their placement in the landscape." He used a methodology prescribed by an industry group known as the Council of Tree & Landscape Appraisers. The methodology takes into account the cost of a replacement tree but also includes consideration of the size, condition and placement of the trees. Placement of the tree is a factor that includes consideration of how the tree provides separation from adjacent properties, wildlife shelter, shade, and aesthetic value. Based on this analysis, Macie valued the trees at $2,345 each or $18,800 for all eight trees. Macie also explained the difference between the value of trees in an urban or suburban environment and trees that are grown specifically for timber. On cross-examination Macie stated that some of the elements of value that he considered inure to all of society, not the tree owner per se.

Mack Harris, the owner of a tree service business, testified he had experience in "two or three cases" in placing a value on trees. He educated himself on valuing trees by reading materials obtained from the "Forest Department at Georgia University" which came from the "International Shade Tree Conference." The court allowed Harris to testify as an expert regarding forestry, tree care, and the value of trees. Although the Klingshirns objected at trial to allowing Harris to testify as an expert, they do not enumerate that decision as error on appeal.

Harris testified that while pine trees on undeveloped land are considered timber, when they are left standing by developers in a subdivision they are considered "shade trees, screening trees, and scenic trees and no longer timber trees." As such the trees have a higher value than when they were timber trees. He explained that based on the size, species, condition, and a constant of $9 per cross-sectional inch, he determined that the eight trees had a value of $19,240.14.

For damages arising out of trespass to property, *Milltown Lumber* allows recovery of the loss of value of the real property ("diminution damages") or "the value of the trees at the time and place of their being felled" plus incidental damage, whichever is higher. *Milltown Lumber*, 5 Ga. App. at 345 (2) (a). The Klingshirns contend that the

"value of the trees at the time and place of their being felled" is limited to timber or market value. See id. at (2); *Central R. &c. Co. v. Murray*, 93 Ga. 256 (1) (20 SE 129) (1894). In short, the Klingshirns argue that Georgia law allows recovery of diminution damages or timber value plus incidentals, whichever is higher, and that restoration costs and shade tree value are irrelevant as measures of the value of a tree.

The rule allowing an injured party to recover the value of the lost trees recognizes that limiting recovery to diminution damages does not always fully compensate the landowner. See *Central R. &c. Co.*, 93 Ga. at 256 (1) (where "there is no depreciation in the market value of the land by reason of the destruction of the timber, the measure of damages is the value of the timber destroyed in its then state as attached to the land on which it grew"); *Western &c. R. Co. v. Tate*, 129 Ga. at 531 (5) (same). However, in Georgia full compensation historically has not included restoration cost or the shade tree value of trees. Although some cases have held that restoration costs or evidence of the value of trees as shade trees may be admitted, those cases explain that that evidence may be admitted only as a part of the proof of the diminution damages. *Langley v. City Council of Augusta*, 118 Ga. 590, 601 (12) (45 SE 486) (1903) (evidence of injury to shade trees admissible for showing diminution damages); *Sims v. Majors*, 178 Ga. App. 679, 680-681 (2) (344 SE2d 501) (1986) (evidence of replacement costs for trees wrongfully cut allowed to show the amount of damage caused to the real property). Thus, if the rule limits damages for injury to a tree to timber value, it benefits only those who use their land to grow and harvest timber, and not those who have a different use of a tree.

Historically, trees and other living things growing on real property are considered appurtenant thereto and have not been valued separately, but rather as part and parcel of the property. They are considered separately only when they are severed from the property as is the case with timber. *Milltown Lumber*, supra. However, this traditional rule does not take into account the value of trees that are not used as timber trees.

Other jurisdictions have developed various measures of damages for injury to or destruction of shade or ornamental trees or shrubs. See generally Anno., 95 ALR3d 508 (1979). Some states continue to limit recovery to diminution damages, some allow recovery of replacement or restoration costs, others allow recovery of the value of the trees or shrubs themselves, and finally, some allow recovery of the aesthetic value, "or as it is sometimes expressed, the resulting deprivation of the comfort and convenience which the trees provided the landowner." Id. at § 2.

The Restatement (Second) of Torts supports restoration costs as

a way of measuring damages in trespass for injury to trees and shrubs. We adopt a similar exception here. The relevant part of § 929 of the Restatement provides as follows:

> (1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred. . . .

The comments to the Restatement further explain that restoration costs disproportionate to the diminution in value are recoverable where there is "a reason personal to the owner for restoring the original condition." Restatement 2d of Torts, § 929, Comment b.

> So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value for the premises has not been decreased by the defendant's invasion.

Id.

Several courts cite § 929 of the Restatement with approval for allowing recovery of restoration costs for loss of trees under certain circumstances. See, e.g., *Rector &c. of St. Christopher's Episcopal Church v. C. S. McCrossan, Inc.*, 306 Minn. 143 (235 NW2d 609) (1975); *Heninger v. Dunn*, 101 Cal. App.3d 858, 863-864 (162 Cal.Rptr. 104) (1980); *Gross v. Jackson Township*, 476 A2d 974 (Pa. Super. 1984); *Denoyer v. Lamb*, 22 Ohio App.3d 136 (490 NE2d 615) (1984); *Leavitt v. Continental Tel. Co. of Maine*, 559 A2d 786 (Me. 1989); *Worthington v. Roberts*, 304 Ark. 551 (803 SW2d 906) (1991); *Keitges v. VanDermeulen*, 240 Neb. 580 (483 NW2d 137) (1992); *Dixon v. City of Phoenix*, 173 Ariz. 612 (845 P2d 1107) (1993); *Threlfall v. Town of Muscoda*, 190 Wis.2d 121 (527 NW2d 367) (1994).

These cases provide the reasons for allowing restoration costs as an exception to diminution damages or timber value.

> Since [the early 1900s], courts throughout the country have placed a greater emphasis on the rights of a property owner to enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have little commercial value or that their destruction may, indeed, even enhance the market value of the property.

*Rector*, 235 NW2d at 610.

> An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated. . . . The owner of property has a right to hold it for his own use and he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale.

(Citations, punctuation and emphasis omitted). *Threlfall*, 527 NW2d at 372.

> To hold that appellant is without remedy merely because the value of the land has not been diminished, would be to decide that by the wrongful act of another, an owner of land may be compelled to accept a change in the physical condition of his property, or else perform the work of restoration at his own expense.

(Citation and punctuation omitted.) *Heninger*, 101 Cal. App.3d at 863-864. "To limit an owner to stumpage [timber value] . . . would be to enforce a timber harvest on the owner without consideration of his/her intended use and his/her real loss." *Denoyer*, 490 NE2d at 620.

Recovery of restoration costs is not without limitation. Only reasonable restoration costs may be recovered, and reasonable restoration may mean using substantially similar rather than identical trees. *Heninger*, 101 Cal. App.3d at 865, and cases cited therein; *Denoyer*, 490 NE2d at 620 (limitation of reasonableness); *Leavitt*, 559 A2d at 788 (restoration cost must be reasonable in relation to the value of the land); *Dixon*, 845 P2d at 1117 (not unreasonable in relation to the damage inflicted). Section 929 of the Restatement limits recovery to "the cost of restoration that has been or may be reasonably incurred."

We hold that a landowner whose trees or other growth has been damaged or destroyed by a trespass may recover the diminution in the market value of the property or the value of the lost trees and growth plus incidental damage, whichever is greater, and that the value of the lost trees or other growth can be measured as the cost of restoration that has been or may be reasonably incurred. Such damages may be based on the use to which the landowner puts the land.

McNeal testified that one of the reasons she bought the house

was that there were trees in the yard and the property was located in a wooded subdivision. She did not want to buy property without trees, plant small trees and wait for them to grow. Several of the trees that were cut provided a visual and sound buffer from the neighboring subdivision, and after they were cut McNeal could hear more noise. She never intended to cut down these trees, and she left another side of her property in a natural state because she liked the "natural look" and because it provided a buffer between her property and another neighbor. Thus there is evidence that McNeal had a personal reason to maintain the existing trees on her property.

In this case, Edward Macie considered the cost of restoration as part of his calculation of the value of the lost trees. The court awarded less than one-third of the value proffered by Macie. The testimony was competent opinion evidence as to value, and questions of value are peculiarly for the factfinder. *Millholland v. Stewart*, 166 Ga. App. 431, 433 (2) (304 SE2d 533) (1983). The award was justified by the evidence.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED JULY 14, 1999 ▮▮▮▮▮▮▮▮▮▮

*Smith, Welch, Studdard & Brittain, Thomas B. McFarland*, for appellants.

*Mumford, Myers & Mooney, Albert A. Myers III*, for appellee.