## A01A0237. TINGLE et al. v. JONES.
### (549 SE2d 477)

RUFFIN, Judge.

Shirley Jones sued her neighbors, the Tingles, for trespass, claiming that, while building a lake on their property, the Tingles destroyed numerous trees on her property. Jones also contends that the improvements to the Tingles' property caused increased water runoff, which damaged her property. A jury found in favor of Jones, and the Tingles appeal, asserting that the trial court erred in failing either to direct a verdict in their favor or grant their motion for a judgment notwithstanding the verdict (judgment n.o.v.). For reasons that follow, we affirm.

The evidence, viewed most favorably to support the jury's verdict,[1] shows that Jones and the Tingles owned adjoining property. Ben Tingle decided to build a small lake on his property. According to Mr. Tingle, the lake was to go "between [my] and Mrs. Jones' property." To this end, in 1996, he contracted with the Georgia Department of Transportation (DOT) for DOT to remove 5,000 cubic yards of dirt from his property. Although the contract incorporated a drawing designating where DOT was to dig, the drawing did not show property boundaries. In 1997, Tingle agreed to sell an additional 5,000 cubic yards of dirt to DOT, and the parties signed a second contract, which incorporated a similar drawing.

Jones was aware of the work being done on the Tingles' property. She testified that, while the Tingles were building their lake, she began noticing water buildup and swampy conditions on her property, which she attributed to the lake construction. Jones also testified that, after hearing the sound of sawing for several days, "I . . . walked around the barn to see what was going on, and I saw that they were over on my side of the property. And so then I walked down there . . . and saw that they had been cutting trees on my side of the property." Hugh Tyre, an arborist, testified that at least 40 trees had been removed from Jones' property. Annette Bowman, a landscape designer, testified that it would cost $33,439 to restore the property.

---

[1] See *Bradford v. City of Albany*, 242 Ga. App. 477, 478 (529 SE2d 906) (2000).

Jones was unable to identify who cut down her trees, but she contends that the Tingles employed the workers. According to Jones, she saw the man the Tingles hired to do yard work, Osby Yancey, standing with the workers. She also saw the workers leave through the Tingles' driveway.

There were several different people who worked on the Tingles' property who might have been responsible for removing Jones' trees. They were the DOT workers. Also, after DOT finished digging, Mr. Tingle paid Billy Cosper $50 per hour to "round[ ] out the lake and [build] the dam." Mr. Tingle also testified that he hired Willie Wells, whom he paid $50 per hour to clear trees from between his property and Jones' property. According to Mr. Tingle, he used spray paint to mark the trees that Wells was to remove. Finally, Mr. Tingle testified that he employed Yancey and Frank Goodwin to perform yard work.[2]

After learning that her trees had been cut down, Jones wrote Mr. Tingle to complain about the removal of the trees. Sometime later, Jones met with Mr. Tingle to discuss having him replace the trees. Jones testified that, after she told Mr. Tingle how much it would cost to restore her property, he "told [me] to sue him; that he wasn't replacing the trees." Mr. Tingle nevertheless brought approximately 12 small, potted trees over to Jones' house and left them in her driveway. Although Jones saw the trees in her driveway, the next day she discovered that the trees were gone, and she assumed Mr. Tingle had picked them up. Mr. Tingle testified that he had planted the trees in Jones' yard without first seeking her permission.

The record shows that, in addition to planting the trees without Jones' permission, Mr. Tingle entered Jones' property at least two other times without first obtaining permission. On one occasion, Jones returned home to find Mr. Tingle mowing her yard with a bush hog. As Jones paid someone else to mow her lawn, she asked Mr. Tingle to stop. On another occasion, Jones discovered Mr. Tingle plowing up a garden patch in her backyard.

On appeal, the Tingles contend that this evidence was insufficient to support a claim of trespass and, thus, the trial court erred in failing either to grant a directed verdict or enter a judgment n.o.v. We disagree.

Neither a directed verdict nor a judgment n.o.v. is proper "unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom,

---

[2] In their brief, the Tingles assert that "[n]o evidence was provided and no inference is possible that either Mr. Yancey or Mr. [Goodwin] have ever cut any trees much less trees on [Jones'] property." At trial, however, Jones testified that Yancey was with the workers who she alleges cut down her trees. Thus, there is some inference that Yancey participated in the cutting of the trees.

*demands* a certain verdict."[3] Here, Jones accused the Tingles of trespass, which "is any wrongful, continuing interference with a right to the exclusive use and benefit of a property right."[4] The evidence that Jones saw workers, at least one of whom was employed by the Tingles, standing on her property next to trees that had recently been cut created a jury issue as to whether the Tingles were responsible for removing the trees.[5] It follows that the trial court did not err in failing to grant a directed verdict or enter a judgment n.o.v.

The Tingles assert that a directed verdict was demanded by the evidence, which "conclusively established that of all the actors which were present during the relevant time period, none except for Mr. Yancey and Mr. [Goodwin] could be considered employees of Mr. Tingle. Of the remaining actors, Mr. Wells . . . , Mr. Cosper, and workmen from the [DOT] were all independent contractors." According to the Tingles, they cannot be held liable for the actions of an independent contractor.

Whether the various workers were, in fact, independent contractors rather than employees was a question for the jury.[6] In this case, the jury, having been properly instructed that an employer generally is not liable for the acts of an independent contractor, nevertheless concluded that the Tingles were liable. The evidence supports this conclusion. Specifically, the record indicates that Mr. Tingle decided to have a lake built on his property and he chose the location, which abutted Jones' property. The evidence also suggests that the damage to Jones' property occurred in connection with the building of the lake. Mr. Tingle testified that he knew where the boundary was between the two properties and that he pointed out the boundary to the various workers. The record also shows, however, that Mr. Tingle did not always respect the boundary between the properties, as he performed work on Jones' property on at least three occasions without first seeking permission. Under these circumstances, the jury was authorized to conclude that Mr. Tingle, once again, disregarded the boundary line, which resulted in trees being removed from Jones' property.[7]

Moreover, the jury could have found the Tingles liable on a basis other than the cutting of trees. It is well settled that the act of diverting water from one's property onto the property of another can give

[3] (Punctuation omitted; emphasis in original.) *MacGibbon v. Akins*, 245 Ga. App. 871 (1) (538 SE2d 793) (2000).

[4] *Lanier v. Burnette*, 245 Ga. App. 566, 570 (3) (538 SE2d 476) (2000).

[5] See *Klingshirn v. McNeal*, 239 Ga. App. 112-113 (1) (520 SE2d 761) (1999).

[6] See *Hooters of Augusta v. Nicholson*, 245 Ga. App. 363, 367 (3) (537 SE2d 468) (2000).

[7] See *Klingshirn*, supra.

rise to an action for trespass.[8] Here, Jones based her complaint both on the tree removal and the damage to her property caused by surface water runoff. Given this additional basis for imposing liability on the Tingles, the trial court did not err in failing to grant a directed verdict or enter a judgment n.o.v.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 17, 2001.

*McNally, Fox & Cameron, Dennis A. Davenport,* for appellants.
*Howard G. Slade,* for appellee.

---

[8] See *Goode v. Mountain Lake Investments,* 271 Ga. 722 (524 SE2d 229) (1999); see also *Baumann v. Snider,* 243 Ga. App. 526 (532 SE2d 468) (2000).