OPINION
{¶ 1} Appellants, Steve Parker and Terri Parker (collectively referred to as "the Parkers"), appeal from a judgment of the Lake County Common Pleas Court that awarded them judgment in the amount of $29,002.31 for damages sustained to their property. On review, we reverse the judgment of the trial court and remand this matter to the trial court.
 {¶ 2} The Parkers own lakefront property at 37371 Lakeshore Boulevard, Eastlake, Ohio. Their property is adjacent to residential property owned by Gary and Lou Ann Hegler (collectively referred to as "the Heglers") at 37337 Lakeshore Boulevard, Eastlake, Ohio. The Heglers' parcel is immediately to the west of the Parkers' parcel. The Parkers' property and the Heglers' property each have approximately 100 feet of frontage on Lake Erie. The yard elevations for both parcels are approximately 25 to 30 feet above the normal lake level.
 {¶ 3} In 2000, the Heglers undertook a road construction project, wherein they excavated on their property and constructed a road to the lake. The road was constructed in a northerly direction from the Heglers' house and, on the easterly side, extended approximately ten feet from the Parkers' property line. The Heglers constructed a retaining wall system extending the entire length of the roadway. At the base of the roadway, on the beachfront, the Heglers installed a series of concrete blocks that were each three cubic feet in order to offer some protection against shoreline erosion.
 {¶ 4} In June 2003, the Parkers sued the Heglers for damages, because the construction of the road by the Heglers caused their property to be unstable and to suffer erosion. The Parkers' complaint prayed for compensatory and punitive damages for their loss.
 {¶ 5} The Heglers filed their answer, which denied that they were negligent in the excavation and construction of the roadway as well as in the subsequent construction of the retaining wall.
 {¶ 6} The case proceeded to a bench trial.
 {¶ 7} At the conclusion of the trial, the trial court requested the parties to submit proposed findings of fact and conclusions of law.
 {¶ 8} The trial court issued preliminary findings of fact and conclusions of law, in which it found that the Heglers were strictly liable for two separate acts. The first act was as follows:
 {¶ 9} "[T]he Heglers excavation of the roadway loosened or destabilized the slope on the Parker property by removing side pressure, or lateral support, along the roadway. Further, the steel beam and concrete panel wall is not sufficiently designed to prevent failure and does not offer adequate support to the Parker property."
 {¶ 10} Secondly, the trial court found that:
 {¶ 11} "[T]he three-foot-cubed concrete blocks placed at the bottom of the roadway by the Heglers have created an 'end condition,' which has altered the natural wave action along the shoreline. * * * The end condition has further resulted in an accelerated erosion of the slope. The damage to the Parker property extends from the northwest corner of the property at least 40 feet to the east."
 {¶ 12} The trial court made additional findings that the Parkers had expended $9,002.31 in engineering and consulting fees to determine the nature and extent of the damage from the excavation.
 {¶ 13} The trial court then considered the costs to remediate the Parkers' property.
 {¶ 14} The trial court found that it would cost $160,000 to remediate the Parkers' property, but that, if such amount were invested, the fair market value of the property would exceed the fair market value before the damage was done.
 {¶ 15} Based upon the above findings of fact, the trial court concluded that "the remediation costs ($160,000) are unreasonably high and will involve significant economic waste if implemented." The trial court approved of the measure of damages adopted in Ohio Collieries Co.v. Cocke.[1] In that case, the Supreme Court of Ohio held:
 {¶ 16} "In an action for damages by reason of loss of subjacent support caused by the removal of pillars, ribs, and stumps in a coal mine, the owner of the surface is entitled to recover, if the injury is of a permanent or irreparable nature, the difference in the market value of the property as a whole, including improvements thereon, before and after the injury. If the restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure."[2]
 {¶ 17} The trial court noted that the damage to the Parkers' property was permanent.
 {¶ 18} Neither party presented evidence at the trial as to the fair market value of the Parkers' property before and after the damage. Therefore, the trial court reset the matter for further hearing to ascertain the fair market values as of those respective times.
 {¶ 19} At the hearing on the fair market value of the Parkers' property, the trial court heard testimony from two professional appraisers. The trial court accepted the lesser value of the Parkers' property for the relevant time periods. The trial court determined the fair market value to be $220,000 before the property damage, and $200,000 after the property damage, for a total diminution in the value of the property of $20,000. Having found that the remediation costs of $160,000 were "unreasonably high," the court concluded as follows: "the cost of repair is not reasonable under the circumstances, the appropriate measure of damages is diminution in value." The trial court then awarded judgment to the Parkers in the amount of $20,000 for the diminution in the value of their property, together with consulting and engineering fees in the amount of $9,002.31, for a total judgment of $29,002.31. In doing so, the trial court cited to a case more recent than the Ohio Collieries case for the proposition that:
 {¶ 20} "The general rule [of the Ohio Collieries case] * * * is not an arbitrary or exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result of the wrongdoer's conduct."[3]
 {¶ 21} However, the trial court was of the opinion that the cases that departed from the general rule of Ohio Collieries, and allowed remediation costs over and above the diminution in value, were cases where the remediation costs were reasonable in amount. Here, according to the trial court, the remediation costs were unreasonable, and, therefore, could not be allowed.
 {¶ 22} The Parkers filed a timely appeal to this court, asserting two assignments of error. The first assignment of error is as follows:
 {¶ 23} "The trial court erred by applying a legal standard inapropos [sic] to contemporary environmental destruction and should have assigned responsibility to the defendants in order to rectify environmental damage instead of to the prevailing plaintiffs where plaintiffs established a loss of subjacent support."
 {¶ 24} In this assignment of error, the Parkers take issue with the measure of damages applied by the trial court. If there is competent, credible evidence to support the trial court's decision, we will not disturb it.[4]
 {¶ 25} Terri Parker testified that, as a result of the excavation by the Heglers, there is a large hole where there used to be soil on their property, as well as increased erosion of their former shoreline. She further testified that she and her husband frequently used the beach to windsurf, take walks on the beach, and walk their dogs. They would also watch the sunsets and storms from the beach area.
 {¶ 26} In one of its conclusions of law, the trial court stated: "[i]n light of the approximate total value of [the Parkers'] property ($200,000 to $220,000), the court finds that the remediation costs ($160,000) are unreasonably high and will involve significant economic waste if implemented."
 {¶ 27} Instead of ascertaining restoration costs that would pass the test of reasonableness, the court cast aside the restoration costs altogether, and gave judgment only for the diminution in value, that being $20,000. We do not agree that this was in accordance with the evidence.
 {¶ 28} The trial court cited to exceptional cases where the usual measure of damages, that is, diminution in value, is not applied, and instead, cost-of-repair is used as the measure of damages if such cost-of-repair is reasonable in amount. In this case, however, the trial court said that the cost-of-repair is not reasonable in amount, and, therefore, the trial court would not apply it as the measure of damages.
 {¶ 29} Based on this court's review of the evidence, we conclude that the Parkers' case is an exceptional case, and that the judgment of the trial court is not supported by the evidence. Specifically, the evidence establishes that significant remediation costs will be involved to restore the Parkers' property after the damage caused by the Heglers. Those costs include the installation of a sheet metal piling in order to reinforce the retaining wall constructed by the Heglers, as well as an erosion control system measuring up to 40 feet on the Parkers' shoreline in order to stem the erosion set in motion by the Heglers. The trial court accepted that these costs would be approximately $160,000.
 {¶ 30} We conclude that, in the case of residential lakefront property, it is not appropriate to apply a rule of law that applied to a commercial coal mine in 1923. The more appropriate rule is prescribed in the Restatement of Law:
 {¶ 31} "(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
 {¶ 32} "(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
 {¶ 33} "(b) the loss of use of the land, and
 {¶ 34} "(c) discomfort and annoyance to him as an occupant."[5]
 {¶ 35} The comments to this section of the Restatement indicate the following:
 {¶ 36} "b. Restoration. Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. * * * If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner forrestoring the original condition, damages are measured only by the difference between the value of the land before and after the harm."[6]
 {¶ 37} In Krofta v. Stallard, the Eighth Appellate District considered the appropriate measure of damages where the neighbor from the adjacent property trespassed onto the plaintiff's property for the purpose of installing an electrical transformer and underground utility lines.[7]
That court found that numerous court decisions have allowed the cost of restoration as the measure of damages in the following circumstances:
 {¶ 38} "[W]hen the real estate is used for residential purposes, when the owner has personal reasons for seeking restoration, and when the diminution in fair market value does not adequately compensate the owner for the injury."[8]
 {¶ 39} That court then cited the case of Denoyer v. Lamb at length in further support of its position:
 {¶ 40} "[I]n Denoyer v. Lamb * * * the court held `when the owner intends to use the property for a residence or for recreation or for both, according to his personal tastes and wishes, the owner is not limited to the diminution in value * * *. He may recover as damages the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of regeneration within a reasonable period of time.'"[9]
 {¶ 41} In addition, in Curtis v. Vazquez, this court had occasion to analyze decisions of this court that have moved away from the "rigid" rule of Ohio Collieries, and have evolved toward a rule of reasonableness.[10] In Curtis, this court stated:
 {¶ 42} "This court held `courts have moved away from a rigid "comparison of market values" test towards a test of "reasonableness."'"[11]
 {¶ 43} To hold otherwise would be to require the Parkers to perform the restoration work at their own expense, because the judgment of $20,000 is woefully inadequate, in light of the evidence, to accomplish the restoration of the Parkers' property.[12]
 {¶ 44} Therefore, we are remanding this matter to the trial court for the purpose of reviewing the evidence already in the record, and ascertaining a reasonable amount of damages that would allow the Parkers to restore their property to a condition as close as reasonably feasible to the condition it enjoyed before the damage caused by the Heglers.
 {¶ 45} The first assignment of error is with merit.
 {¶ 46} The Parkers' second assignment of error is as follows:
 {¶ 47} "The trial court erred to the prejudice of plaintiff-appellants [sic] in its analysis of damages by combining the damages arising from defendant-appellees [sic] two independent strict liability acts rather than analyzing each damage item from each act separately."
 {¶ 48} The trial court considered the remediation costs to restore the Parkers' property to be $160,000. It did not award judgment for this amount, because it determined that such amount was unreasonable. In its factual findings, the trial court treated this amount as an aggregate amount when it determined that the remediation costs were unreasonable. It did not analyze the separate remediation costs of $110,000 to install an erosion control system, and $50,000 to install sheet metal pilings, in terms of whether each remediation cost was likewise unreasonable.
 {¶ 49} Our review of the trial court's analysis contained in its factual findings is pursuant to an abuse of discretion standard.[13]
An abuse of discretion is "`more than an error of law or judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.'"[14] In addition, an abuse of discretion is a "perversity of will, passion, prejudice, partiality, or moral delinquency."[15] Under this standard of review, a reviewing court may not merely substitute its judgment for that of the trial court.16
 {¶ 50} The Parkers contend that the trial court erroneously combined the amount of remediation costs and calculated total remediation costs to be $160,000. Instead, argue the Parkers, the trial court should have considered separately the two acts of liability, and viewed the remediation costs as $110,000 for installation of a shoreline erosion system to repair the damage caused by the three-cubic-foot concrete blocks, and $50,000 to install sheet metal piling along the retaining wall to repair the loss of lateral support. The implication from their argument is that, had the trial court considered these costs separately, it may well have found the separate costs to be "reasonable" and awarded judgment for one or both of those amounts.
 {¶ 51} The Parkers further argue that, by combining remediation costs, an "inequitable application of the law" results; and that such a "combination of damages lowered [the Parkers] recovery and resulted in the wrongdoer [the Heglers] limiting [their] liability to one wrongdoing rather than two."
 {¶ 52} Civ.R. 54 governs the award of judgments by a trial court.
 {¶ 53} Civ.R. 54(C) provides, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings."
 {¶ 54} Civ.R. 54(B) contemplates that a party may have "more than one claim for relief," which may arise "out of the same or separate transactions," and that, in such case, "the court may enter final judgment as to one or more but fewer than all of the claims[.]"
 {¶ 55} Note that the civil rules quoted above speak to one or more "claims" for relief instead of "acts" of liability. Therefore, we shall analyze the Parker's argument under this assignment of error in terms of the "claims" for relief presented by them.
 {¶ 56} In this case, the Parkers stated three different claims for relief in their complaint. The first claim stated that the Heglers "removed lateral support for [the Parkers'] property," and that the Heglers are strictly liable for the damage caused to their property. The second claim stated that the excavation work performed by the Heglers constituted negligence in that it violated a duty to refrain from committing damage to the Parkers' property. The third claim stated that, as a result of the acts stated in the first two claims, the Parkers suffered a diminution in the value of their property.
 {¶ 57} None of these three claims state that the Heglers are liable to the Parkers for creating an "end condition" along their shoreline that exacerbated the erosion on their property. No amended complaint was filed by the Parkers.
 {¶ 58} Further, in their demand for relief, the Parkers prayed for compensatory and punitive damages. Their prayer for compensatory damages was as follows: "[c]ompensatory damages in excess of $25,000, plus reasonable attorney fees, costs, and any other such amount deemed equitable and just[.]"
 {¶ 59} Thus, insofar as the complaint of the Parkers was to guide the trial court as to their claims for relief, the Parkers' complaint, including their demand for relief, gave no indication to the trial court that they were seeking an itemized judgment entry that would separately detail each claim for relief. On the contrary, their demand for relief lumped their preceding claims into one demand for compensatory damages. The Parkers can point to no civil rule, or other rule of law, that would have required the trial court to itemize its judgment entry where the party seeking relief never indicated as much in its pleadings. Our review of Civ.R. 54 concludes that the trial court's order fulfilled the duty cast upon the trial court by Civ.R. 54(C). The trial court attempted to grant the relief to which the trial court believed that the Parkers were entitled and, thereby, complied with the express provisions of that rule. It was not required to itemize its judgment where the pleadings filed by the Parkers did not call for it. Thus, the trial court committed no abuse of discretion in this regard.
 {¶ 60} The second assignment of error is without merit.
 {¶ 61} The judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
CYNTHIA WESTCOTT RICE, J., concurs, DIANE V. GRENDELL, J., dissents with Dissenting Opinion.
[1] Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238.
[2] Id. at paragraph five of the syllabus.
[3] Thatcher v. Lane Constr. Co. (1970), 21 Ohio App.2d 41,48-49.
[4] (Citations omitted.) Capstone Homes, Inc. v. Ruffin (Apr. 13, 2001), 2d Dist. No. 2000-CA-101, 2001 Ohio App. LEXIS 1742, at *4. See, also, Harris v. Back (Mar. 17, 1986), 12th Dist. No. CA85-06-072, 1986 Ohio App. LEXIS 5967, at *6-7.
[5] Restatement of the Law 2d, Torts (1979), section 929.
[6] (Emphasis added.) Id. at Comment b.
[7] Krofta v. Stallard, 8th Dist. No. 85369, 2005-Ohio-3720.
[8] (Citations omitted.) Id. at ¶ 22.
[9] Id at ¶ 23, quoting Denoyer v. Lamb (1984), 22 Ohio App.3d 136,138.
[10] Curtis v. Vazquez, 11th Dist. No. 2003-A-0027,2003-Ohio-6224.
[11] Id. at ¶ 24, quoting Martin v. Miller (Mar. 23, 2001), 11th Dist. No. 2000-T-0027, 2001 Ohio App.LEXIS 1394, at *5.
[12] See Klingshirn v. McNeal (1999), 239 Ga. App. 112, 118, 520
S.E.2d 761, 766.
[13] See Kalain v. Smith (1986), 25 Ohio St.3d 157, 159.
[14] (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
[15] Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. 16. Id.