S02G0203. BLOCKUM v. FIELDALE FARMS CORPORATION.
(573 SE2d 36)

BENHAM, Justice.

In October 1999, appellant Victor Blockum, a black poultry grower in Banks County, Georgia, sued appellee Fieldale Farms ("Fieldale"), a poultry integrator, alleging Fieldale had illegally terminated its contract with Blockum to grow poultry. The trial court granted summary judgment to Fieldale, and the Court of Appeals affirmed that judgment in an opinion issued pursuant to Rule 36 of the Rules of the Court of Appeals. We granted Blockum's petition for a writ of certiorari and expressed particular interest in whether the grant of summary judgment was precluded by the existence of genuine issues of material fact regarding Blockum's claims of racial discrimination, breach of contract, fraud, misrepresentation, intentional infliction of emotional distress, and violations of 42 USC §§ 1981 and 1982; and whether the trial court erred when it concluded that Blockum had failed to state a claim under 42 USC § 1982.

In his complaint, Blockum averred that he approached Fieldale about growing poultry for Fieldale at a specified farm and that Fieldale's broiler manager had informed Blockum that Fieldale required Blockum to drop a lawsuit alleging racial discrimination that he had filed against Gold Kist, another chicken integrator,

before Blockum would get a Fieldale contract to grow poultry. The Fieldale broiler manager said he would arrange for Gold Kist to pay Blockum $10,000-$15,000 in settlement of the claim and, if Blockum did as he was told, Fieldale would enter into a contract with Blockum to grow poultry on the farm Blockum had suggested. Blockum dropped his Gold Kist claim in exchange for $15,000 and gave a deposition in which he stated he had believed his inability to raise poultry for Gold Kist was due to the company's racial discrimination; that the poultry farmer with whom he was working reinforced that belief; that Blockum had come to realize it was the poultry farmer and not Gold Kist who was the cause of Blockum's lack of opportunity; and that, at the urging of the poultry farmer, Blockum had filed a claim alleging racial discrimination, but was now "pulling out."

After the Gold Kist settlement, Fieldale's broiler manager told Blockum he would give him a poultry contract only if the poultry were raised in "clear-span" chicken houses, causing Blockum to embark on a two-year search for "clear-span" houses. When Blockum returned to the broiler manager to remind him of the promised contract, the broiler manager told him he would arrange for Blockum to lease a nine-house farm. Though only two of the nine houses were "clear-span," the broiler manager assured Blockum that one of Fieldale's owners had said the post houses would not be a problem. Blockum and the owner of the nine-house farm made extensive repairs to the post houses in anticipation of the arrival of poultry. Fieldale's supervisor for the area told Blockum he would provide poultry for only two of the houses at first, and would supply enough for the remaining seven houses shortly thereafter. On April 15, 1997, David Wicker, the Fieldale representative, and Blockum executed a written contract that obligated Blockum to raise poultry to be delivered to him by Fieldale. Fieldale delivered flocks for the two "clear-span" houses and Blockum successfully raised them. When Blockum inquired about flocks for the remaining seven houses, according to Blockum, the representative told him another contract would be signed covering the remaining houses when the poultry for those houses was delivered.

According to Blockum, the Fieldale representative repeatedly declined Blockum's requests for a letter of commitment covering all nine houses. Blockum and the farm owner agreed that Blockum would purchase the two clear-span houses and lease the seven remaining houses from the farm owner, but Fieldale's representative refused to give Blockum the needed letter of commitment. When Fieldale declined to put poultry in the seven "post" houses due to a company policy put in place in January 1995, the only economically viable option for the farm owner was to sell the two "clear-span" houses to a white couple who, after entering into a contract for the

purchase of the two-house farm, received a letter of commitment from Fieldale to raise poultry in the two houses.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cits.]" *Youngblood v. Gwinnett Rockdale &c.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

1. The trial court granted summary judgment to Fieldale on Blockum's claim of economic coercion after finding that the applicable statute of limitation expired before suit was filed. Blockum has not contested the trial court's determination of this issue following this Court's grant of his petition for a writ of certiorari; accordingly, we will not review this portion of the trial court's order, and the Court of Appeals' affirmance of it stands affirmed.

2. In granting summary judgment to Fieldale on Blockum's breach of contract claim, the trial court found that the alleged contract between Blockum and the broiler manager could not be enforced because Blockum's consideration for the contract (settlement of his lawsuit against Gold Kist and the giving of false testimony in a deposition conducted by Gold Kist's attorneys) involved the illegal act of false swearing. "If the consideration is illegal in whole or in part, the whole promise fails." OCGA § 13-3-45. " 'An illegal consideration consists of any act . . . which is contrary to law. . . .' " *Hanley v. Savannah Bank & Trust*, 208 Ga. 585, 586 (68 SE2d 581) (1952). Knowingly and willfully making a false statement while under oath constitutes the offense of false swearing. OCGA § 16-10-71 (a). Accordingly, we agree with the trial court that the alleged oral contract between Blockum and the broiler manager is void and cannot be enforced. Likewise, Blockum's allegations of fraud and misrepresentation in connection with the oral contract cannot stand because it is not an enforceable contract. Accordingly, we affirm the Court of Appeals' affirmance of the grant of summary judgment on these issues. However, the same analysis cannot be applied to Blockum's claim for breach of the *written* contract executed by him and David Wicker, on behalf of Fieldale. "Where the terms of a written contract are clear and unambiguous the court will look to the contract alone to find the intention of the parties." *Health Svc. Center v. Boddy*, 257 Ga. 378, 380 (2) (359 SE2d 659) (1987). Within the four corners of the written contract, there is no mention

that its execution is the result of illegal consideration. Accordingly, the trial court erred when it granted summary judgment to Fieldale on the ground that the contract could not be enforced due to illegal consideration, and the Court of Appeals erred in affirming this portion of the trial court's decision.

3. The trial court granted summary judgment to Fieldale on Blockum's claim that Fieldale's actions resulted in the intentional infliction of emotional distress. " 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' [Cit.]" *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). It is a question of law whether a claim rises to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress. Id. If there is evidence from which reasonable persons can find severe emotional distress resulting from extreme and outrageous conduct, the issue is one for the jury. Id.

Taking Blockum's claims as true for purposes of summary judgment, the trial court acknowledged that Fieldale's actions constituted "extreme and outrageous conduct" and that Blockum had established he suffered from a variety of maladies. The trial court granted summary judgment to Fieldale after concluding that Blockum had not established a causal connection between the wrongful conduct and the emotional distress. The trial court labeled as "self-serving statements" medical reports outlining Blockum's complaints and his connection of them to "a situation hav[ing] begun to occupy his time and psyche more and more," and the physician's advice to "stay away" from the situation while prescribing medication and treatment regimens to alleviate the condition. We disagree with the trial court's determination that Blockum's reports to his physician of his symptoms and their origin cannot constitute evidence from which reasonable persons could find that the severe emotional distress suffered by the plaintiff was causally connected to the extreme and outrageous conduct of the defendant. See *Sevcech v. Ingles Markets*, 222 Ga. App. 221 (3) (474 SE2d 4) (1996) (plaintiff's testimony sufficient evidence of causal connection to withstand defendant's motion for summary judgment). See also *Johnson v. American Red Cross*, 253 Ga. App. 587 (3) (569 SE2d 242) (2002) (evidence that plaintiff was given blood transfusion using blood that might have HIV was sufficient evidence to establish the causal connection to emotional distress). Accordingly, the grant of summary judgment on this issue was error, as was the Court of Appeals' affirmance on this issue.

4. In granting summary judgment to Fieldale on Blockum's claim

alleging racial discrimination pursuant to 42 USC § 1981,[1] the trial court assumed that Blockum had established a prima facie case and that Fieldale had shown that its action was not racially motivated but was done for legitimate, non-discriminatory reasons — its 1995 policy against raising poultry with new growers in post houses, and the fact that Blockum's landlord sold to a third party the two "clear-span" houses Blockum was renting. See *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F3d 145, 149-150 (7th Cir. 1996) (court is free to assume plaintiff has established a prima facie case and proceed directly to whether plaintiff has sufficient evidence of pretext to avoid summary adjudication). The trial court then determined that Blockum had failed to establish that Fieldale's reasons were pretextual, and granted summary judgment to Fieldale.

"Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Kline v. TVA*, 128 F3d 337, 342-343 (6th Cir. 1997). To avoid summary judgment, a plaintiff must present "significantly probative" evidence on the issue of pretext because the plaintiff has the burden of establishing pretext. *Young v. General Foods Corp.*, 840 F2d 825, 829 (11th Cir. 1988). "[I]n considering whether a plaintiff has presented a jury question on pretext, [it is] required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's *overall* justification." *Isenbergh v. Knight-Ridder Newspaper Sales*, 97 F3d 436, 444 (11th Cir. 1996).

To rebut Blockum's prima facie case of discrimination, Fieldale stated its unwritten policy, enacted in January 1995, of contracting with new poultry growers who used "clear-span" houses only. Growers whose use of post houses predated the policy were not covered by the new policy, and their immediate family members were exempted if the grower's contract were transferred to the immediate family member. Also exempted from the policy were "one-flock" contracts Fieldale might execute when its summer production demands required additional poultry. Fieldale stated that its refusal to contract with Blockum, who approached Fieldale about growing poultry for Fieldale in February 1995 and did not qualify for an exemption to the "no post-house" policy, was the result of enforcement of its policy and not racial discrimination. Fieldale pointed out that it had rejected white applicants who wished to grow poultry in the same post houses that Blockum had suggested. Fieldale stated it did not continue its written contract with Blockum because the individual

---

[1] "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ."

who had leased the two clear-span houses used by Blockum had sold the houses to a third party.

In response, Blockum presented an affidavit from a Fieldale supervisor who left Fieldale's employ in the Spring of 1995. The former supervisor stated that the policy against the use of "post" houses purportedly enacted in January 1995, a few weeks before Blockum approached Fieldale, was not in the company's written policy manual. Blockum also presented the joint affidavit of two poultry growers who stated they had leased two post houses in September 1997 from a non-relative and raised poultry for Fieldale in the post houses until May 1998. The former Fieldale employee also testified he had never heard of an African-American growing poultry for Fieldale; he had referred an African-American friend to Fieldale's corporate personnel as a potential grower; he had heard Fieldale corporate personnel use racial epithets when referring to the employment of black poultry growers; and his referral was never hired by Fieldale. The man who leased the chicken houses to Blockum stated in his affidavit that he had known of no black Fieldale growers in the 17 years he had worked with Fieldale and had been told by corporate personnel Fieldale was "desperate" to obtain minority growers.

Blockum also presented an affidavit from the Fieldale grower who leased two clear-span and seven post houses to Blockum. While Blockum was raising poultry in the clear-span houses, the affiant inquired of the Fieldale representative when the flocks would arrive for the seven post houses and was told the eggs were in the hatchery and would be delivered in a few days. When Fieldale subsequently refused to supply poultry for the seven houses, the affiant's "only economically viable option" was to sell the two clear-span houses to someone else.

After reviewing the evidence, we conclude that Blockum presented significantly probative evidence of facts that, if believed, would present a basis for the disbelief of Fieldale's overall justification for its actions. *Isenbergh v. Knight-Ridder*, supra, 97 F3d at 444; *Young v. General Foods*, supra, 840 F2d at 829. Inasmuch as the trial court based its grant of summary judgment to Fieldale on its determination that Blockum did not present sufficient evidence of pretext to avoid summary judgment, the grant of summary judgment was error, as was the Court of Appeals' affirmance.

5. Blockum asserted that Fieldale violated Blockum's rights protected by 42 USC § 1982 when Fieldale failed to issue to Blockum a statement of commitment to enable Blockum to secure financing to purchase a poultry farm, yet issued a letter to the white couple who purchased the two clear-span houses Blockum had been leasing. The trial court granted summary judgment to Fieldale after concluding that Blockum failed to state a claim because possession of a letter of

commitment was not a prerequisite to the purchase of the farm since the white couple did not receive their letter until after they had contracted to purchase the chicken houses.

Section 1982, part of the Civil Rights Act of 1866, provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." "To effectuate the remedial purposes of the statute, the [United States Supreme] Court has broadly construed this language [of Section 1982] to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens." *City of Memphis v. Greene*, 451 U. S. 100, 120 (101 SC 1584, 67 LE2d 769) (1981). Stated succinctly, 42 USC § 1982 bars all racial discrimination, private as well as public, in the sale or rental of property. *Jones v. Alfred H. Mayer Co.*, 392 U. S. 409, 437 (88 SC 2186, 20 LE2d 1189) (1968).

To establish a prima facie case under Section 1982, a plaintiff must establish he is a member of a racial minority who applied to rent or purchase certain real property or housing and was rejected, despite being qualified to rent or purchase the property or housing; and that the housing or rental opportunity remained available after the plaintiff's rejection. *Metro Fair Housing Svcs. v. Morrowood Garden Apts.*, 576 FSupp. 1090 (N.D. Ga. 1983), rev'd on other grounds sub nom., *Watts v. Boyd Properties*, 758 F2d 1482 (11th Cir. 1985). In the trial court, Blockum established that he had sought a letter of commitment from Fieldale and had been rejected. Fieldale asserted that Blockum had not asked for a letter and, further, that Blockum had not established such a letter was required to buy the farm since the white couple who purchased the farm and to whom Fieldale issued a letter did not get the letter until after they had executed the contract to purchase the farm.[2] In granting summary judgment to Fieldale on this issue, the trial court concluded the issuance of a letter could not have been a prerequisite to the sale of the farm because the couple "did not receive their letter of commitment until well after their **purchase** of the farm. . . ." (Emphasis supplied.) The evidence of record, however, does not support the trial court's factual determination. According to their affidavit, the couple signed the contract to purchase the farm on May 19, 1997, and closed on the purchase on October 17, 1997. Fieldale issued the letter of commitment on June 25, 1997, nearly four months before the couple purchased the farm.[3]

---

[2] We assume that the denial of a request for issuance of a letter of commitment involves an impairment to the kind of property interests within the reach of § 1982. See *City of Memphis v. Greene*, supra, 451 U. S. at 124.

[3] The letter informed the reader that Fieldale intended to enter into a "Broiler Produc-

Inasmuch as the trial court's grant of summary judgment is based on facts not supported by the record, the grant was error, as was the Court of Appeals' affirmance thereof.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Fletcher, C. J., who concurs in judgment only.*

DECIDED NOVEMBER 25, 2002.

*McGriff, Cuthpert, Wyatt & Associates, George W. McGriff, Eric E. Wyatt,* for appellant.

Victor Blockum, *pro se.*

*Alston & Bird, Jay D. Bennett, Paul J. Kaplan,* for appellee.

---

tion Agreement" with the couple upon their purchase and renovation of the farm they had under contract.