## A09A0091. NORTON v. HOLCOMB.
(682 SE2d 336)

ANDREWS, Presiding Judge.
We considered this case previously in *Norton v. Holcomb*, 285 Ga. App. 78 (646 SE2d 94) (2007), affirming the trial court's grant of summary judgment to the plaintiff, Vinnie Worley Holcomb, on her claim of intentional trespass against the defendant, Dirone C. Norton. We also affirmed the trial court's grant of summary judgment to Holcomb on Norton's counterclaim seeking to quiet title, condemnation of a private way, and damages for wrongful obstruction. Id. We remanded for further proceedings; at trial, a jury found for the plaintiff on all counts. On Holcomb's trespass claim, it awarded $5,000 nominal damages, $5,000 special damages for dam-

age to real estate, and $5,000 general damages.[1] On Holcomb's claim for intentional infliction of emotional distress, the jury awarded $200,000. Holcomb also received attorney fees of $35,000 and punitive damages of $30,000.

On this appeal from the trial court's entry of judgment on the verdict, Norton argues that the trial court erred in (1) denying his motion for a judgment notwithstanding the verdict on the emotional distress claim; (2) awarding both punitive damages and emotional distress damages; (3) allowing an excessive damages award to stand; (4) making certain evidentiary rulings; (5) failing to give a complete damages charge; and (6) allowing the punitive damages award to stand. We agree with Norton as to the emotional distress claim but affirm in all other respects.

On appeal from a jury verdict, we affirm if any evidence supports the jury's verdict, construing the evidence in the light most favorable to the prevailing party. *Ferman v. Bailey*, 292 Ga. App. 288, 290 (2) (664 SE2d 285) (2008). In order to prevail, Norton must show "that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Citation and punctuation omitted.) *Harrouk v. Fierman*, 291 Ga. App. 818, 820 (1) (662 SE2d 892) (2008). See also OCGA § 9-11-50 (a); *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996) (standards of review for directed verdict and judgment notwithstanding the verdict are the same).

So viewed, the evidence at trial showed that Holcomb inherited ten acres of undeveloped Pickens County property in 1996. Holcomb testified at deposition that Norton talked to her in July 2003 about wanting to cut a road through her property to reach property behind hers he wanted to buy. She responded that she "[didn't] want [her] property messed with."

Later in 2003, Norton bought almost 60 acres of landlocked property behind Holcomb's property. His deed of conveyance included no easement or right-of-way allowing him to cross Holcomb's property to get to his property, although he testified that an old road existed across Holcomb's property which he and the community had used for years. Norton returned to Holcomb and asked her to trade a piece of her property for a piece of his so he could put a road through, but she refused. He responded, " 'Yeah, but I want that. I want yours.' He came down with his fist like that and says [sic]: 'I want yours, and I can go right through the middle of it with a bulldozer.' " Holcomb thought that this "was ridiculous and not the

---

[1] Norton does not assert error in the award of both general and nominal damages.

truth. You know, I just never thought about it. I thought he was being funny about it."

Norton came to Holcomb's house twice for the purpose of obtaining access to the land, but did not succeed in seeing her. On the second occasion, Holcomb told her son-in-law to tell Norton to leave her alone. When the son-in-law talked to Norton on Holcomb's porch, Norton said he was going to get access through Holcomb's property one way or the other, shook his paperwork, and said he would see them in court.

In August or September 2003, Norton came to the house of Holcomb's daughter and son-in-law, who lived next door to Holcomb, with a stack of papers. Norton "started off calmly," but then flung his papers at the daughter and said, " '[Y]ou have got to get your mother — you have to get your mother to give me that acre of land.' " The daughter's husband then came out and told Norton to leave Holcomb alone. Norton then threatened to "take a bulldozer" through the property and that "it will all be over with and done before [Holcomb] even knows anything about it."

In June 2004, Norton contracted with a timber company to sell some trees on his property, intending to use Holcomb's property to gain access to his property. The timber company's contracting officer testified that he thought his company was traversing an old road bed, not Holcomb's private property, which it cleared so its larger vehicles could get in. Norton testified he consulted a lawyer who advised him he could use the old roadbed as long as he did not widen it beyond 20 feet, although the lawyer testified otherwise. The lawyer testified, however, that he told Norton about a similar situation in which one party cut a road through the other party's property and a lawsuit resulted.

The timber company hired a construction company to clear a road through Holcomb's property, and on June 7, 2004, the construction company did so, bulldozing more than 30 trees and cutting through the roots of 30 more to create an 18-foot-wide roadway. It pushed the trees clear of the road and left them lying on Holcomb's property, as directed by Norton. No silt fence or erosion control measures were installed. A short time later, Holcomb called her son-in-law and said she had been told there was a bulldozer on her property. He went to the site and saw Norton standing on the roadway that had been cut through Holcomb's woods. When asked what he was doing, Norton told the son-in-law to talk to Norton's lawyer, who had advised him he could cut the road. The son-in-law then drove Holcomb to the edge of the property. She could see the first 50 or 60 feet of broken trees pushed off the side into her woods and a dirt path scraped clean by the bulldozers. The son-in-law thought Holcomb "seemed to be extremely upset about it."

Shortly after the road was cut through Holcomb's property, her daughter and son-in-law strung barbed wire across it, hung a "Keep Out" sign on the wire, and put up signs reading "Posted No Trespassing." The timber company returned the next week and, under Norton's direction, removed the signs and barbed wire and began moving heavy equipment across Norton's property. Her daughter loaded Holcomb and her portable oxygen tank into the car and they went to the property to check on it. Trees had been removed from Norton's property but the timber company had already left by the time Holcomb had arrived.

Norton saw the barbed wire and signs posted by Holcomb's daughter and son-in-law but directed the timber company to remove them and proceed anyway because he thought he had a right to use what he described as an old road bed. The timber company traversed Holcomb's property for nine to thirteen days until the deputy sheriff told them to remove their equipment or it would be impounded. Norton admitted that at least nine of those days were after Holcomb's son-in-law told him he was trespassing, and Norton also admitted he directed the timber company to ignore the posted no trespassing signs. After Norton was served with Holcomb's suit alleging trespass and other counts, he returned to Holcomb's property without permission and took pictures.

An arborist testified that Holcomb's property contained trees in good health averaging 30 years old, with the largest trees being 16 inches in diameter. A total of 31 trees had been uprooted to clear the path and more than 40 percent of the root systems of 32 more trees were destroyed. The total tree loss was valued at $15,066.

1. Norton contends that the trial court erred in denying his motion for judgment notwithstanding the verdict on Holcomb's claim for intentional infliction of emotional distress. We agree.

To succeed in a claim for intentional infliction of emotional distress, a plaintiff must prove the existence of intentional conduct that was extreme and outrageous, and causing severe emotional distress. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. In the absence of any physical impact to her person, a plaintiff seeking to recover for emotional distress must show that the conduct in question was directed at her. *Ryckeley v. Callaway*, 261 Ga. 828, 829 (412 SE2d 826) (1992).

Even assuming that Norton acted with animus, "malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." *Ryckeley v. Callaway*, 261 Ga. at 829. Neither Norton's

threat nor his later trespasses nor these taken together authorize Holcomb's claim for emotional distress. According to Holcomb's own testimony, Norton's threat made to her directly did not cause her any distress; instead, she found his assertions "ridiculous and not the truth. . . . I just never thought about it. I thought he was being funny about it." And Norton's later trespasses, for which the jury awarded compensatory and punitive damages, were not committed in her presence. The trial court thus erred when it denied Norton's motion for directed verdict concerning Holcomb's emotional distress claim. Id. (affirming trial court's grant of motion to dismiss plaintiffs' emotional distress claim arising from defendants' damaging of private burial ground).

2. Norton contends that the jury's award of punitive as well as compensatory damages constitutes an unlawful double recovery. We disagree.

> As a general rule, where a plaintiff pleads and proves actual pecuniary loss for which he or she seeks compensatory damages, and the tort complained of is of such an aggravated nature to warrant a charge on punitive damages, it is permissible for the jury to award both compensatory damages for the injury done and additional or punitive damages. *Woodbury v. Whitmire*, 246 Ga. 349, 351 (271 SE2d 491) (1980).

(Punctuation omitted.) *Stover v. Atchley*, 189 Ga. App. 56 (1) (374 SE2d 775) (1988). Further, "a jury may award different measures of damages on multiple claims if the evidence establishes several distinct torts. [Cit.]" *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 356 (2) (a) (514 SE2d 691) (1999).

The evidence showed that Norton committed multiple trespasses. It follows that the award of both compensatory damages and punitive damages was authorized.

3. Norton asserts the damages award is unlawfully excessive. We disagree.

Under OCGA § 51-12-12 (a), "[t]he question of damages is ordinarily one for the jury[,] and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." The jury awarded $30,000 in punitive damages, or about twice all other damages. Questions concerning the amount of punitive damages to be awarded are for "the enlightened conscience of the jury." *Curl v. First Fed. Sav. & Loan Assn.*, 243 Ga. 842, 843 (2) (257 SE2d 264) (1979). "Moreover, because the trial court approved the verdict in denying [Norton's]

post-trial motion, a presumption of correctness arises that will not be disturbed absent compelling evidence. [Cit.]" *Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002). Apart from the award for emotional distress, which we have reversed in Division 1, supra, the remaining damages awarded were not so flagrantly excessive as to create a clear implication of bias, prejudice, or gross mistake.

4. Norton claims the trial court erred in sustaining Holcomb's objection to the admission into evidence of certain documents which, according to Norton, supported his belief that he had a right to clear the road. These documents included a 1904 State of Georgia geological map, an affidavit from a neighbor attesting to the existence of a road on Holcomb's property, and Norton's "file" containing approximately 30 items, described by the trial court only as "varied." The trial court also excluded a quitclaim deed Norton obtained in 2006 from the previous owner of his property, releasing any claim the previous owner had to the alleged roadway on Holcomb's property.

(a) The trial court allowed into evidence Norton's deed, other maps, a plat of Holcomb's property, photographs and aerial photographs, and Norton's September 2006 suit against Holcomb in Pickens County seeking an easement on Holcomb's land. The trial court did not err when it excluded evidence offered to prove a fact established by other evidence. *Mitchell v. Gay*, 111 Ga. App. 867, 873 (6) (143 SE2d 568) (1965).

(b) Affidavits by witnesses who could have been called to testify in person were properly excluded as classic hearsay under OCGA § 24-3-1 (a) (under the necessity exception to the hearsay rule, the trial court allowed into evidence the affidavit of a neighbor who had died before trial). The record does not describe which documents were contained in Norton's "file," which the trial court excluded upon objection. In the absence of greater specificity, we find no error. See *Jones v. Blackburn*, 75 Ga. App. 791, 795 (5) (44 SE2d 555) (1947).

(c) The March 2006 quitclaim deed could not establish that Norton had a legal right to bulldoze Holcomb's property in June 2004. The trial court did not err in excluding this irrelevant evidence. See *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. 791, 794 (3) (608 SE2d 245) (2004).

5. Norton contends the trial court erred in refusing to charge the jury that the measure of damages for lost trees may be based on the use to which the landowner puts the land. Again, we disagree.

Norton's representation that Holcomb only used her property for timber is not supported by the record. Holcomb testified that her father twice had some timber cut somewhere at some time on his 30 acres, but she also testified that her father planted corn, cotton, and a family garden on the property.

The trial court charged the jury that a landowner whose trees were damaged by a trespasser may recover either the diminution in the property's market value or the value of the lost trees plus incidental damage, whichever is greater. This accurately reflected the law. See *Klingshirn v. McNeal*, 239 Ga. App. 112, 118 (520 SE2d 761) (1999). The jury was presented with expert testimony regarding both measures of damages, moreover, and was fully charged regarding witness testimony. Viewing the charges as a whole, "the failure to give the pertinent requested [charge] in the exact language requested is not ground for reversal." *Palmer v. Wilkins*, 163 Ga. App. 104, 108 (294 SE2d 355) (1982).

6. Norton's argument that the plaintiff presented no evidence of wilful repetition of trespass to justify the punitive damages award is without merit. See *Tyler v. Lincoln*, 272 Ga. 118, 120 (1) (527 SE2d 180) (2000).

*Judgment affirmed in part and reversed in part. Johnson, P. J., Blackburn, P. J., and Mikell, J., concur. Miller, C. J., Barnes and Ellington, JJ., concur in part and dissent in part.*

BARNES, Judge, concurring in part and dissenting in part.

I concur fully and completely in Divisions 2 through 6, but because I think the trial court did not err in allowing the jury to decide Vinnie Holcomb's intentional emotional distress claim, I must dissent to Division 1.

While this court must decide as a matter of law "[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress," *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991), once we have determined that the claim meets that level, we must affirm the denial of motions for a directed verdict, judgment notwithstanding the verdict, and new trial on this ground if any evidence supports the jury's verdict. *Ferman v. Bailey*, 292 Ga. App. 288, 290 (2) (664 SE2d 285) (2008). In this case, Holcomb presented evidence that Norton's intentional conduct was completely outrageous and caused her severe emotional distress which was sufficient to allow the claim to go to the jury and to sustain its verdict.

In addition to the requisite elements of (1) intentional conduct (2) that was extreme and outrageous, causing (3) emotional distress which was (4) severe, a plaintiff seeking to recover for emotional distress must show that, in the absence of a physical impact to her person, the conduct in question was directed at her. *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

disappointment, worry, and nausea. *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (335 SE2d 445) (1985). Further, evidence of a defendant's wanton disregard of a plaintiff's rights may be considered in evaluating whether or not the objected-to behavior can reasonably be characterized as outrageous or egregious. *Gordon v. Frost*, 193 Ga. App. 517, 521 (388 SE2d 362) (1989).

The majority concludes that Holcomb failed to present evidence showing Norton's conduct was "extreme and outrageous" or that her emotional distress was severe. Evidence of Norton's intentional trespass following his repeated unsuccessful attempts to buy or trade for the portion of Holcomb's property and repeatedly being told that Holcomb was sentimentally attached to the land should constitute sufficient evidence of extreme and outrageous conduct to allow a jury to consider the issue. Holcomb testified that when she declined to trade or sell her property to Norton so he could put in a road, Norton "came down with his fist," said he wanted the property, and said he could go right through the middle of it with a bulldozer. Although at one point she testified that she only talked to Norton once about selling the property, at another point she testified that Norton "came back" to try to trade with her for other property. He contacted Holcomb's family, who spoke for Holcomb, repeatedly about the issue; he was told to stop harassing Holcomb about it, he knew she was emotionally attached to the land, he knew he had legal options he could pursue, and despite knowing Holcomb did not want him to "mess with" her land, Norton bulldozed a path through her property anyway.

Merely to threaten and harass an 81-year-old woman in obviously frail health with such an intentional trespass is arguably extreme and outrageous conduct; to actually commit such a trespass is certainly extreme and outrageous. Holcomb's daughter testified that she thought Norton believed Holcomb would die before she ever got to court and that he would get away with bulldozing a road through her mother's property.

In determining whether a defendant could be liable for intentional infliction of emotional distress,

> the extreme and outrageous character of the conduct "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know."

*Gordon v. Frost*, supra, 193 Ga. App. at 521, quoting Comment f, § 46

(1) of the Restatement (Second). Norton knew that Holcomb was an elderly woman and in the face of her outright refusal to trade him property he resorted to bulldozing her land without her permission. His action gave rise to natural feelings of distress and vulnerability when Holcomb saw that Norton had altered her land despite her objections. Based on the facts stated above, a jury could reasonably find that the defendant's behavior was extreme and outrageous. "Once the evidence shows that reasonable persons might find the presence of extreme or outrageous conduct, the jury must find the facts and make its own characterization." Id.

As to the requirement that Holcomb present evidence that her emotional distress over Norton's actions was severe, her daughter testified that Holcomb cried when she saw the devastation and that the impact on her emotionally had been terrible, both her daughter and son-in-law testified that Holcomb was "extremely upset" about the damage, and Holcomb testified that Norton's actions made her feel terrible all the time, had affected her physically, and that she worried about it and wondered why he did it. The effect on her was "not a good one," she said, and although she had medical problems beforehand they were not as bad as afterward.

This evidence of Holcomb's emotional distress over Norton's bulldozing her forest property was sufficient to authorize the jury to consider Holcomb's claim for intentional infliction of emotional distress. See *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 801 (3) (573 SE2d 36) (2002) (plaintiff's reports to physician of symptoms resulting from defendant's intentional outrageous conduct constituted sufficient evidence of causation).

Further, while we have held that a defendant's outrageous conduct must be directed toward the plaintiff before she may recover for intentional infliction of emotional distress, we have explained that

> [w]here the mental pain and anguish result from a wanton and wilful wrong which is a violation of a legal right or duty owed to the plaintiff although unaccompanied by a physical injury or monetary loss, recovery can be had for mental pain and anguish; but, if the mental pain and anguish result from mere violation of a mere moral obligation, there can be no recovery.

*Sanders v. Brown*, 178 Ga. App. 447, 450-451 (343 SE2d 722) (1986). Norton's wanton and wilful wrong in this case was not the "mere violation of a mere moral obligation"; it was a violation of Holcomb's legal right to enjoy her property unmolested. OCGA § 51-9-1. Norton knew that cutting the trees on Holcomb's ancestral land

would devastate her emotionally, but he did it anyway.

Because the trial court did not err in denying Norton's motion for a directed verdict and post-trial motions on Holcomb's claim for intentional infliction of emotional distress, I respectfully dissent from that portion of the majority opinion.

I am authorized to state that Chief Judge Miller and Judge Ellington join in this opinion.

DECIDED JULY 16, 2009

*William A. Neel, Jr.*, for appellant.

*Downey & Cleveland, George L. Welborn, Mary E. Priest*, for appellee.