**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A0935. HORTON et al. v. DENNIS et al.

ELLINGTON, Presiding Judge.

Raford and Virginia Horton filed this personal injury action in the Superior Court of Telfair County against Joseph Dennis, The Putnam Group, LLC, Horton Iron Works, LLC, and Horton Iron Works' liability insurer (collectively, "the appellees"). On the eve of trial, the Hortons added a claim for attorney fees under OCGA § 13-6-11, alleging that, by denying liability until the eve of trial and then stipulating to liability and going to trial on damages only, the appellees had been stubbornly litigious and caused them unnecessary trouble and expense. The appellees moved for judgment as a matter of law on the Hortons' attorney fee claim. After a hearing, the trial court granted the appellees' motion, and the Hortons appeal. For the reasons explained below, we affirm.

Viewed in the light most favorable to the Hortons as the nonmovants,[1] the record shows the following. On October 27, 2008, Mr. Horton was severely injured when a tractor-trailer operated by Joseph Dennis (an employee of Horton Iron Works, LLC and under the interstate motor carrier authority of The Putnam Group, LLC) crossed the center line of Ga. Highway 31 near McRae and crashed into Mr. Horton's truck. In addition to injuries requiring multiple joint replacements, debridements, and other surgeries, the Hortons claim that, as a result of the wreck, Mr. Horton also suffered a mild traumatic brain injury, which impairs his memory and mental function, and damage to his sacral or pudendal nerves, which results in permanent loss of erectile function.

On June 8, 2009, the Hortons filed suit for Mr. Horton's personal injury and Mrs. Horton's loss of consortium. During discovery, the appellees interviewed and

[1] A directed verdict is authorized "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict[.]" OCGA § 9-11-50 (a). "But where any evidence or some evidence exists to support a jury issue on the [nonmovant]'s claims, a directed verdict is improper." (Citation and punctuation omitted.) *Sun Nurseries v. Lake Erma*, 316 Ga. App. 832, 835 (730 SE2d 556) (2012). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test." (Citations and punctuation omitted.) *Robert E. Canty Bldg. Contractors v. Garrett Machine & Constr.*, 270 Ga. App. 871, 872 (1) (608 SE2d 280) (2004).

2

deposed witnesses to determine whether Mr. Horton had been at fault in causing the wreck. In addition, the appellees explored during discovery the nature and extent of Mr. Horton's alleged damages. Among other witnesses, the Hortons took the depositions for use at trial of two of his treating physicians: Alan Harben, M.D., a rehabilitation specialist, who opined that Mr. Horton suffered a traumatic brain injury and had some resulting cognitive impairment; and Walter Wilifong, M.D., a urologist, who opined that Mr. Horton suffered a pelvic nerve injury which caused him to be impotent.

The appellees questioned Dr. Harben about the medical evidence linking the trauma from the accident to any cognitive impairment, and Dr. Harben answered that no intracranial bleeding or other physical signs of brain trauma were evident on brain scans that were done in the immediate aftermath of the wreck. The deposition of Dr. Harben also showed that his opinion that Mr. Horton was experiencing cognitive deficits was based largely on logic and memory tests; because Mr. Horton had not completed such tests before the wreck, Dr. Harben could not objectively compare Mr. Horton's cognitive function before the wreck and after the wreck. Dr. Harben conceded that certain lesions and abnormalities detected in brain scans that were performed several months after the wreck could not reliably be attributed to the wreck

3

and could have been age related (Mr. Horton was 60 years old at the time of the wreck and 62 at the time Dr. Harben tested his cognitive functions).

The appellees questioned Dr. Wilifong about the extent of Mr. Horton's erectile dysfunction. Dr. Wilifong answered that his opinion that Mr. Horton suffered from erectile dysfunction was based on Mr. Horton's statement that after the wreck he and his wife had sexual relations only once per month (compared to once or twice per week before the wreck) and that he had trouble having erections. Because pelvic crush injuries often cause impotence, Dr. Wilifong assumed that Mr. Horton's erectile difficulties stemmed from the wreck, and he focused on treating Mr. Horton's self-reported erectile dysfunction and not on finding its cause. Dr. Wilifong conceded that Mr. Horton's sexual problems could be caused by something other than a nerve injury. In addition, Dr. Wilifong conceded that, if Mr. Horton were able to get a normal erection at all, even if less frequently, it would show that his pelvic nerves were intact, but Dr. Wilifong could not recall ever asking Mr. Horton that question.

Just before trial was scheduled to commence on September 26, 2011, the appellees opted to stipulate to "liability," that is, their "fault for how this accident happened" and "responsibility for the accident." The appellees also conceded that the wreck proximately caused Mr. Horton's crushed pelvis, injuries to his left knee and

left hip, and foot drop. The appellees contested, however, that the wreck was the proximate cause of Mr. Horton's alleged traumatic brain injury or his alleged pelvic nerve damage and permanent loss of erectile function.

With the trial court's permission, the Hortons amended their complaint to add a claim for attorney fees under OCGA § 13-6-11, alleging that the appellees had been stubbornly litigious and had caused the Hortons unnecessary trouble and expense. Specifically, the Hortons alleged that "[n]o bona fide controversy or dispute [had] ever existed in this case as to the fault of . . . Dennis in causing [the] collision" and as to the other appellees' liability for Dennis's actions. The Hortons alleged that the appellees were stubbornly litigious from the time they answered the Hortons' complaint, denying any liability, until September 26, 2011, when the appellees admitted in a written stipulation that Dennis was at fault for negligently causing the collision. The trial court bifurcated the trial, reserving the issue of attorney fees to the second phase.

At the conclusion of the first phase of the trial, the jury returned a verdict in favor of the Hortons as follows: $1,252,804 for Mr. Horton's medical bills, $184,010 for past and future lost income, $1,150,000 for past and future mental and physical pain and suffering, and $250,000 for Mrs. Horton's loss of consortium. The trial court

then took up the appellees' pending motion for judgment as a matter of law on the Hortons' claim for attorney fees. At the hearing, the Hortons stipulated that there had been "a bona fide controversy as to some of [Mr. Horton's] damages."[2] The court noted that the parties agreed that bad faith was not an issue. The trial court concluded that a bona fide controversy had existed at least regarding the issue of whether Mr. Horton had a traumatic brain injury and erectile dysfunction that were proximately caused by the appellees' admitted negligence. In addition, the court found that the amount of damages for the Hortons' losses had always been in dispute and that the appellees had not "displayed a 'so sue me' attitude that has been present in several cases where attorney fees pursuant to OCGA § 13-6-11 were allowed."[3] Based on this, the trial court found that it would be improper to submit the Hortons' attorney

---

[2] In addition, when the court considered certain evidentiary matters during trial, the Hortons' counsel expressly acknowledged on the record that the appellees were denying that some of Mr. Horton's claimed injuries, "specifically areas of traumatic brain injury and damage to the pudendal nerve that allows sexual function," were "connected" to the wreck.

[3] See *Brown v. Baker*, 197 Ga. App. 466, 469 (5) (398 SE2d 797) (1990) (physical precedent only) (A recovery of attorney fees has been authorized under OCGA § 13-6-11 for causing the plaintiff unnecessary trouble and expense where a defendant, who had no valid reason for refusing to pay a claim, adopted a "so sue me" attitude and insisted on going to trial.); *Southern R. Co. v. Crowe*, 186 Ga. App. 244, 248 (2) (366 SE2d 846) (1988) (accord); *U-Haul Co. v. Ford*, 171 Ga. App. 744, 746 (4) (320 SE2d 868) (1984) (accord).

fee claim to a jury and granted the appellees' motion for judgment as a matter of law on that claim.

The Hortons contend that the trial court erred in finding as a matter of law that a bona fide controversy existed on proximate cause. Further, the Hortons contend that, even if there was a dispute on proximate cause as to some of the Hortons' damages, the appellees' denial of liability through two years of litigation was not justified.

"Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract." (Citation omitted.) *Moon v. Moon*, 277 Ga. 375, 379 (6) (589 SE2d 76) (2003). See OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages[.]"). The Supreme Court of Georgia reminds our courts to be mindful

> of the provision of our Constitution that "no person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII. This is a privilege granted to the defendant as well as the plaintiff. Where there is a bona fide controversy for the tribunals to settle, and the parties can not adjust it amicably, there should be no burdening of one with the counsel fees of the other, unless there has been wanton or excessive indulgence in litigation.

(Citation and punctuation omitted.) *Anderson v. Cayes*, 278 Ga. App. 592, 595 (630 SE2d 441) (2006).[4] Further, "[s]ince any . . . statute [that provides for the award of attorney fees] is in derogation of common law, . . . it must be strictly construed against the award of such damages." (Citations omitted.) *VSI Enterprises v. Edwards*, 238 Ga. App. 369, 375 (2) (518 SE2d 765) (1999).

One such statutory provision is OCGA § 13-6-11, which authorizes the finder of fact to make an award of attorney fees and other expenses of litigation where (1) the plaintiff specially pleads and prays for such an award, and (2) the finder of fact finds that the defendant acted in bad faith in the underlying transaction or that, after the transaction on which the cause of action is predicated, the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense. When

---

[4] See *Monroe v. Taylor*, 259 Ga. App. 600, 601 (1) (577 SE2d 810) (2003) ("As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract. When awarded by statute, such fees may be obtained only pursuant to the statute under which the action was brought and decided.") (citation and punctuation omitted); Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U. Pa. L. Rev. 636, 637 (I) (A) (1974) (The so-called "American Rule" of attorney fees holds that "in the absence of contrary statutory authority a litigant must, with few exceptions, bear the single greatest cost of asserting his legal rights – his attorney's fees – regardless of the outcome of his action.") (footnote omitted).

bad faith is not an issue, as in this case,[5] and the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, an award under OCGA § 13-6-11 is authorized where the evidence reveals that no bona fide controversy or genuine dispute existed – "whether of law or fact, on liability or amount of damages, or on any comparable issue." (Citation and punctuation omitted.) *Anderson v. Cayes*, 278 Ga. App. at 593. "A mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness." (Citations and punctuation omitted.) *Dimambro Northend Assocs. v. Williams*, 169 Ga. App. 219, 225 (6) (312 SE2d 386) (1983) (Where a bona fide controversy existed, the evidence did not demand a verdict for either side, and there was no evidence of bad faith, stubborn litigiousness, or unnecessary trouble and expense, an award for attorney fees under OCGA § 13-6-11 was not supported.).[6]

---

[5] See *Haarhoff v. Jefferson at Perimeter, L.P.*, 315 Ga. App. 271, 273 (2) (727 SE2d 140) (2012) ("Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated.") (citation and punctuation omitted).

[6] See also *White v. Scott*, 284 Ga. App. 87, 90 (1) (643 SE2d 356 (2007) ("[T]he existence of a bona fide dispute and a reasonable defense at trial precludes the award of attorney fees and expenses of litigation under OCGA § 13-6-11.") (citation and punctuation omitted) (physical precedent only); *Evans v. Willis*, 212 Ga. App. 335, 338 (1) (c) (441 SE2d 770) (1994) ("[M]ere refusal to pay a disputed claim is not sufficient to award attorney fees on grounds of either stubborn litigiousness or

9

Although whether a bona fide controversy exists is *normally* a question for the jury to decide, we have also repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not "any evidence" to support an award based on stubborn litigiousness or the causing of unnecessary trouble and expense. *Driggers v. Campbell*, 247 Ga. App. 300, 304 (4) (543 SE2d 787) (2000).[7] It follows that, where a bona fide controversy clearly exists between the parties, the defendant is entitled to judgment as a matter of law on the plaintiff's claim for attorney fees and expenses of litigation based on stubborn litigiousness or the causing of unnecessary trouble and expense. *Daniel v. Smith*, 266 Ga. App. 637, 638 (1) (597 SE2d 432) (2004).[8] Like an order granting a defendant's motion for summary judgment or for a

causing unnecessary trouble and expense.") (citation omitted).

[7] See also *White v. Scott*, 284 Ga. App. at 88 (1) (accord) (physical precedent only); *Anderson v. Cayes*, 278 Ga. App. at 593 (accord); *Scully v. 1st Magnolia Homes*, 274 Ga. App. 890 (619 SE2d 392) (2005) (accord); *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (3) (466 SE2d 27) (1995) (accord); *Dimambro Northend Assocs. v. Williams*, 169 Ga. App. at 224-225 (6) (accord).

[8] But see, *Covington Square Assocs. v. Ingles Markets*, 287 Ga. 445, 446-448 (696 SE2d 649) (2010) (Although a *defendant* is entitled to judgment as a matter of law on a plaintiff's claim for attorney fees and expenses of litigation under OCGA § 13-6-11 if there is no evidence to support the award, "a trial court is not authorized to grant summary judgment in favor of a claimant therefor" because, on summary judgment, the trial court is not a trier of fact.).

directed verdict, a determination that there is not any evidence to support an award under OCGA § 13-6-11, based on stubborn litigiousness or the causing of unnecessary trouble and expense, is subject to de novo review. *Driggers v. Campbell*, 247 Ga. App. at 304 (4); *Webster v. Brown*, 213 Ga. App. 845, 846-848 (2) (446 SE2d 522) (1994); *Dimambro Northend Assocs. v. Williams*, 169 Ga. App. at 224-225 (6).

In this case, the record shows that a bona fide controversy between the parties clearly existed throughout the litigation. As detailed above, the appellees cross-examined the Hortons' experts and elicited testimony that was consistent with defending against Mr. Horton's claims for damages flowing from his alleged brain injury and erectile dysfunction. The appellees also argued to the jury that the Hortons failed to prove that, as a result of the wreck, Mr. Horton suffered a traumatic brain injury or any pelvic nerve injury related to erectile dysfunction and, therefore, that the jury should not award damages based on those alleged injuries. Thus, the record contains evidence that the appellees genuinely disputed, in addition to the amount of the Hortons' damages, the issue of the proximate cause of certain injuries that the Hortons attributed to the wreck. In addition, the record contains no evidence that the appellees forced the Hortons to resort to litigation or caused them unnecessary trouble

11

and expense in the absence of such a dispute. We conclude, therefore, that the trial court did not err in refusing to submit the Hortons' claim under OCGA § 13-6-11 to the jury. *French v. Dilleshaw*, 313 Ga. App. 834, 840 (2) (723 SE2d 64) (2012) (In a suit for the plaintiff's lost earnings while his truck was disabled through the defendant's negligence, the trial court sitting as the finder of fact erred in awarding the plaintiff attorney fees where there was a genuine dispute about the amount of damages, which reasonable people might have calculated in different ways.); *Brito v. Gomez Law Group*, 289 Ga. App. 625, 628-629 (2) (658 SE2d 178) (2008) (The trial court correctly granted the defendant's motion for summary judgment on the plaintiff's OCGA § 13-6-11 claim in their legal malpractice suit where a bona fide controversy clearly existed on the issues of whether the attorney breached a fiduciary duty and the amount of the plaintiffs' damages.); *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380, 383-384 (3) (277 SE2d 753) (1981) (The trial court erred in submitting the plaintiff's OCGA § 13-6-11 claim to the jury where a bona fide controversy clearly existed in light of conflicting expert testimony on the question whether the defendant negligently installed the plaintiff's pool.).[9]

---

[9] Cf. *Universal Underwriters Group v. Southern Guar. Ins. Co.*, 297 Ga. App. 587, 589 (677 SE2d 760) (2009) (Where the evidence at trial showed that the defendant had no defense to negligence or proximate cause, where the parties

*Judgment affirmed. Phipps, C. J., and Branch, J., concur.*

---

stipulated to the amount of the plaintiff's damages, and where there was no legal basis for the apportionment of damages between the defendant and a third party, the defendant's argument on appeal that a bona fide dispute had existed failed; the trial court did not err in submitting the plaintiff's OCGA § 13-6-11 claim to the jury.); *Southern R. Co. v. Crowe*, 186 Ga. App. at 247 (2) (The trial court correctly submitted the plaintiff's claim under OCGA § 13-6-11 to the jury where the record established that the defendant was merely stonewalling on the issue of its liability for the plaintiff's losses from a fire sparked by its railroad to force the plaintiff to litigate.); *Beaudry Ford v. Bonds*, 139 Ga. App. 230, 231 (2) (228 SE2d 208) (1976) (The trial court correctly submitted the plaintiff's claim under former Code Ann. § 20-1404 [current OCGA § 13-6-11] to the jury where the record established that the defendant intractably and baselessly denied liability in the plaintiff's bailment action to force the plaintiff to litigate and only submitted evidence on the issue of the amount of the plaintiff's damages in a belated effort to defeat the plaintiff's claim for attorney fees and expenses.).