**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2023**

# In the Court of Appeals of Georgia

A23A0774. COLUMBIA COUNTY v. SATCHER et al.

MCFADDEN, Presiding Judge.

Columbia County appeals from a judgment after a bench trial, awarding money damages for storm water damage to landowners William W. Satcher, Pierwood Investment Corp., and Columbia Road Professional Centre Owners Association, Inc. The landowners alleged and the trial court awarded damages for claims for nuisance, inverse condemnation, trespass, negligence, and adverse possession. The court also enjoined the county from "maintaining a defective stormwater drainage system."

We hold that the landowners' lawsuit is not barred by the running of the statute of limitation. We hold that their ante litem notice was timely for the nuisance damages they incurred in the 12 months preceding the presentation of the notice, but

that it was error to award damages for harm incurred after the presentation of the notice.

On the merits, we hold that the adverse possession claim fails, whether or not the ante litem notice requirement applies. The county disclaims any right to an easement, and we hold that our law does not force one to take title to an easement against their will. See OCGA § 44-5-161 (a) (4) (providing that "a claim of right" is a requisite of a prescriptive easement).

We also hold that the trial court erred by awarding the landowners OCGA § 13-6-11 attorney fees because the parties had a bona fide dispute of law. We hold that the trial court erred by awarding damages based on the cost of repair instead of the market value of the property actually taken and the consequential damage to the remainder. Finally, we hold that the trial court did not err by entering the injunction.

1. *Factual background*.

After a bench trial, "[t]he trial court's factual findings will be upheld if there is any evidence to support them." *Alejandro v. Alejandro*, 282 Ga. 453 (1) (651 SE2d 62) (2007).

Viewed in this light, the evidence shows that the landowners purchased the property at issue in 1996. At that time it was undeveloped, but it contained a 48-inch

corrugated metal pipe that had been in place since at least 1976. The landowners later developed the property into an office complex and built a parking lot over the pipe.

In March 2011, a storm overwhelmed the pipe at the headwall, eroded a berm under the parking lot, and a portion of the parking lot collapsed. The landowners made repairs, replacing 17 feet of pipe. In 2013 there were more heavy rains that caused a section of the pipe to fail, which in turn caused part of the parking lot to collapse. A few years later, the pipe failed again and the parking lot completely collapsed.

The landowners presented the county with an ante litem notice in October 2013, presenting claims based on inverse condemnation, trespass, nuisance, and negligence. They filed their complaint on March 27, 2014. The landowners alleged that the county's streets and storm water system cause excessive quantities of storm water to be collected and then discharged through the pipe onto the property, causing the property to flood and to incur damages, and that this constituted a nuisance. At trial, they additionally pursued a claim for damages on the ground that the county had obtained a prescriptive easement in the pipe through adverse possession.

After the bench trial, the trial court found in favor of the landowners, ruling that the county had maintained and the landowners had been damaged by a continuing

nuisance that could be abated and which amounted to an inverse condemnation, or, alternatively, that the county had obtained a prescriptive easement in the landowners' pipe and thus was liable for damages from the pipe's failure. The court awarded the landowners $130,824.04 in damages and $73,772.58 in bad faith attorney fees under OCGA § 13-6-11. The court also enjoined the county "from maintaining a defective storm water drainage system that causes damage to [p]laintiffs' property." The county filed this appeal.

2. *Ante litem notice and statute of limitation pertaining to the inverse condemnation, trespass, nuisance, and negligence claims*

The county argues that the landowners' action was barred because the statute of limitation had run and because they failed to timely present their ante litem notice. At least as to the claims for inverse condemnation, trespass, nuisance, and negligence, we hold that the claims are not barred by the statute of limitation and that the ante litem notice was timely as to those damages incurred in the 12 months preceding the presentation of the notice. (We address the prescriptive easement by adverse possession issues in Division 3.)

(a) *Nuisance*

4

First we note that the landowners' claims for inverse condemnation, trespass, nuisance, and negligence are duplicative and, in fact, are one claim to be analyzed under a theory of nuisance. This is because "[c]ounties, unlike municipalities, can be liable for conditions created on private property *only* under the constitutional eminent domain provisions against taking or damaging such property for public purposes without just and adequate compensation, which provisions function as a waiver of sovereign immunity." *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006) (emphasis supplied). In other words,

> [a] county may be liable for damages if it creates a condition on private property, such as a nuisance, that amounts to inverse condemnation or a taking without compensation. Regardless of how the various claims are denominated, therefore, the plaintiffs may recover if and only if the trespass or nuisance [or negligence] amounted to the taking of property without just compensation[.]

Id. (citation and punctuation omitted). So the landowners' claims for trespass, nuisance, and negligence "are duplicative of the inverse condemnation claim," id., and we analyze them as one. See, e.g., *McFarland v. DeKalb County*, 224 Ga. 618, 618 & 619-620 (3) (163 SE2d 827) (1968) (treating trespass and nuisance claims from the flow of water onto plaintiff's property as one claim for nuisance resulting

5

in the taking and damaging of property); *Klingensmith v. Long County*, 352 Ga. App. 21, 24 (1) n. 4 (833 SE2d 608) (2019) (analyzing trespass, nuisance, and negligence claims from the flow of water as one claim under theory of nuisance because "in essence, these claims together are proceeding as an inverse condemnation claim"); *Stroud v. Hall County*, 339 Ga. App. 37, 44 (4) (793 SE2d 104) (2016) (noting that "[o]ur Supreme Court has treated claims of nuisance and trespass based on water incursion as synonymous" and analyzing those claims under theory of nuisance).

(b) *Accrual of claims*

The ante litem notice statute applicable to claims against counties provides that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred. . . ." OCGA § 36-11-1. The statute of limitation applicable to nuisance claims provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." OCGA § 9-3-30 (a).

While the precise date that the landowners first observed harm is disputed, there is no question that they became aware of harm no later than 2011. The landowners presented their ante litem notice to the county in October 2013 and filed

6

their complaint on March 27, 2014. Whether the ante litem notice and the complaint were timely depends upon the time their claims accrued.

The county argues that the time of accrual depends on whether the alleged nuisance was permanent or abatable, and here any nuisance was permanent. So, the county argues, the claims accrued in 1996 when the landowners observed storm water moving riprap on the property, and their lawsuit is barred by the running of the statute of limitation. The county adds that even if the claims accrued in 2011, when the landowners undisputedly observed harm, the 2013 ante litem notice was untimely and the lawsuit is barred.

The county bases its arguments on *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331 (711 SE2d 641) (2011), in which our Supreme Court held that if a nuisance is permanent, then "a plaintiff is allowed only one cause of action to recover damages for past and future harm and [t]he statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable." Id. at 333 (2). See also *Klingensmith*, 352 Ga. App. at 27-28 (2) (b) (833 SE2d 608) (2019) (plaintiffs' claims stemming from a permanent nuisance were barred by OCGA § 36-11-1 because they presented notice to the county more than one year after they had observed the problems).

But in *Wise Business Forms v. Forsyth County*, __ Ga. __ (__ SE2d __) (Case No. S22G0874, decided Sept. 19, 2023), the court stated that "this language from *Forrister* is imprecise because it does not explain that this standard will not apply in all permanent nuisance cases." Id. at __ (2). The court explained that in circumstances where the structure or activity that is alleged to be a nuisance

> is not injurious in and of itself, [it may] become[ ] a permanent and continuing nuisance because of some supervening cause, like heavy rains, which produces special injury at different periods. In such cases, a separate action lies for each injury thus occasioned, and the statute begins to run from the time when the special injury is occasioned.

Id. at __ (2) (citations and punctuation omitted).

Such is the case here. The parties dispute when the landowners first observed harm. But the evidence showed that, regardless of when they first observed harm — and regardless of whether the nuisance was abatable or permanent — the landowners experienced additional harm in May 2013, November 2013, and June 2016[1], when the parking lot finally collapsed. So their 2014 lawsuit, filed within four years of these harms, was not barred by OCGA § 9-3-30 (a)'s four-year statute of limitation:

---

[1] The trial court found that final collapse occurred in 2015, but the only trial evidence on the point suggested that it occurred in 2016.

8

when a nuisance is by its nature continuing, the plaintiff can elect to proceed in one of two ways. The first option would be to treat the nuisance as temporary and file a lawsuit to recover for all those damages or harms which have occurred to the plaintiff's property within the past four years. And, by implication, when the plaintiff elects to proceed in this manner and treats the nuisance as temporary, if the continuing nuisance causes additional harms to the plaintiff's property in the future, the plaintiff can file another lawsuit seeking recovery for these additional harms, as long as the plaintiff initiates the lawsuit within four years from the occurrence of that future harm. Alternatively, the plaintiff can elect to file a single lawsuit to recover for harms that occurred to the plaintiff's property within the past four years and for all prospective harms that might occur to the plaintiff's property in the future. And, if the plaintiff elects to proceed in this manner, the plaintiff is limited to seeking those damages in one lawsuit.

*Wise Business Forms*, __ Ga. at __ (2) (citations and punctuation omitted). And the ante litem notice was timely as to "those damages incurred in the 12 months preceding the giving of the notice." *Reid v. Gwinnett County*, 242 Ga. 88, 89-90 (249 SE2d 559) (1978).

(c) *Claims that accrued after the presentation of the ante litem notice*

The landowners presented their ante litem notice in October 2013 but sought recovery for and were awarded damages for harm incurred in November 2013 and

June 2016, after the presentation of the notice. The county argues that the landowners could recover only damages incurred during the 12 months preceding the presentation of their ante litem notice. We agree.

As noted, OCGA § 36-11-1 provides, "All claims against counties must be presented within 12 months *after they accrue* or become payable or the same are barred. . . ." (Emphasis supplied.) Under this Code section, a plaintiff "is entitled to recover those damages incurred in the 12 months preceding the giving of the notice." *Reid*, 242 Ga. at 89-90.

Citing *City of Atlanta v. Landmark Environmental Indus.*, 272 Ga. App. 732, 743-744 (9) (613 SE2d 131) (2005), the landowners argue that they could recover damages for harms incurred after the presentation of the ante litem notice. In that case, we held that the ante litem notice statute applicable to municipalities, OCGA § 36-33-5, does not prevent a plaintiff from recovering continuing nuisance damages incurred after the presentation of the ante litem notice. But in *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 684 (3) (2009), a case involving nuisance claims against a county, we held that *Landmark Environmental Indus.*, supra, was "neither controlling nor persuasive [on this issue] because of the differences between the origin of claims against counties and cities." We concluded that the trial court

properly limited the plaintiff's claim against the county to the harms incurred in the 12-month period preceding her ante litem notice. Id. Cf. *DeKalb County v. Bolick*, 249 Ga. 843, 844 (1) (295 SE2d 92) (1982) (property owner did not have to present a second ante litem notice in order to pursue a contempt motion against county for its failure to comply with injunction entered in action that was the subject of the first ante litem notice).

So the trial court erred by awarding damages for harms incurred after the presentation of the ante litem notice.

We observe that *Reid*, 242 Ga. at 88, and *Wise*, __ Ga. at __, may be in tension. *Reid* holds that a plaintiff "is entitled to recover those damages incurred in the 12 months preceding the giving of the [ante litem] notice." *Reid*, 242 Ga. at 89-90. *Wise* (which did not discuss ante litem notice requirements) holds that a plaintiff may elect to sue in one lawsuit "for harms that occurred to the plaintiff's property within the past four years and for all prospective harms that might occur to the plaintiff's property in the future." *Wise*, __ Ga. at __. We are not required to resolve this possible tension because here the landowners did not sue for "prospective harms that might occur to [their] property in the future." Id. Instead, at trial they sought damages for the specific harms that occurred to their property in 2013 and 2016.

11

3. *Adverse possession*

The county argues that the trial court erred by finding it liable for damages under the landowners' theory of adverse possession. We agree.

The landowners argued at trial that the county was liable for damages because it had obtained a prescriptive easement by adverse possession in their pipe. The trial court ruled in their favor on this claim, concluding that "any maintenance, repair, or damage caused by the failure of the pipe within that prescriptive easement was the [c]ounty's responsibility."

First we observe that the landowners' ante litem notice did not present the prescriptive easement claim to the county; the notice presented claims based on inverse condemnation, trespass, nuisance, and negligence. It is not clear whether the landowners were required to present the county with ante litem notice of the prescriptive easement claim. Compare *Lynch v. Harris County*, 188 Ga. 651, 654 (2) (4 SE2d 573) (1939) (plaintiff was not required to present ante litem notice to county of claim for ejectment to recover title to land from county), and *Jones v. Fulton County*, 207 Ga. App. 397, 398 (4) (427 SE2d 802) (1993) (OCGA § 36-11-1 does apply to an action for compensation for the taking of land).

Although the county raised at trial the issue of lack of ante litem notice of this claim, the trial court did not address this issue separately from its general finding that the landowners' ante litem notice was timely since the nuisance was abatable. . And on appeal, the parties do not argue this particular point. So we pretermit the issue. See *Kay v. Davis*, 253 Ga. App. 884, 886 (560 SE2d 761) (2002) (pretermitting the issue of sufficiency of ante litem notice to city). We don't need to decide the issue because we hold that the trial court erred by concluding that the county had obtained a prescriptive easement in the pipe by adverse possession.

"Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law." OCGA § 44-5-160. In this case, that period is 20 years. OCGA § 44-5-163. "An incorporeal right which may be lawfully granted, such as a right of way or the right to throw water upon the land of another, may be acquired by prescription." OCGA § 44-5-175. "Prescriptive title to an easement is governed by the same rules as prescriptive title to land." *Ga. Power Co. v. Gibson*, 226 Ga. 165, 165 (2) (173 SE2d 217) (1970). OCGA § 44-5-161 defines those rules. The statute provides:

> In order for possession to be the foundation of prescriptive title, it: (1) [m]ust be in the right of the possessor and not of another; (2) [m]ust not

have originated in fraud . . . ; (3) [m]ust be public, continuous, exclusive, uninterrupted, and peaceable; and (4) [m]ust be accompanied by a claim of right.

OCGA § 44-5-161 (a).

We observe that the landowners do not cite, and we have not found, a case imposing an easement by prescription when the alleged holder of the easement disclaims any right to the easement, such as the case here. This is not surprising "[s]ince the law does not force one to take title to real property against a person's will. . . ." 26A CJS Deeds § 90. And this is consistent with the requirement of OCGA § 44-5-161 (a) (4) that in order to find a prescriptive easement, the claimant's possession "must be accompanied by a claim of right." In the case the landowners cite in support of their argument, *Clack v. Henry County*, 261 Ga. 623 (409 SE2d 647) (1991), it was undisputed that the county claimed and had acquired a right-of-way by prescription.

On the required element of "claim of right," the trial court found that, "since at least 1976 the [c]ounty claimed the right to and did in fact manage and control stormwater across [p]laintiffs' property. And [p]laintiffs' is the only property where it did not have the express legal right to do so." So, the court concluded, "the

14

evidence established the [c]ounty acquired an easement by adverse possession to control and transfer public water through the pipe across [p]laintiffs' property."

> [A] "claim of right" is synonymous with "claim of title" and "claim of ownership." While this does not mean that the possession must be accompanied by a claim of title out of some predecessor, it does mean that there must be some claim of title in the sense that the possessor claims the property as his own. A claim of right will be presumed from the assertion of dominion, particularly where the assertion of dominion is made by the erection of valuable improvements. However, the exercise of dominion over property does not eviscerate a possessor's need to demonstrate a claim of right when conflicting evidence of the claim of right is presented.

*Houston v. James*, 358 Ga. App. 510 (855 SE2d 714) (2021) (citations and punctuation omitted). Additionally, the claim of right must be made in good faith. "[O]ne must enter upon the land claiming in good faith the right to do so." *Halpern v. Lacy Investment Corp.*, 259 Ga. 264, 265 (1) (379 SE2d 519) (1989); see also *Mayor and Council of Forsyth v. Hooks*, 182 Ga. 78, 84 (1) (184 SE 724) (1936) ("Before prescription can arise under an asserted claim of right, the claim must be honestly entertained.") (citation and punctuation omitted). "To enter upon the land without any honest claim of right to do so is but a trespass and can never ripen into prescriptive title." *Halpern*, 259 Ga. at 265 (1).

15

It was the landowners' burden to prove the prescriptive easement by a preponderance of the evidence. *Kelley v. Randolph*, 295 Ga. 721, 723-724 (1) (763 SE2d 858) (2014). They presented no evidence regarding the county's claim of right before they purchased the property in 1996 (other than evidence that public water has flowed on the property at least since 1976). But there was testimony that in 2011 and 2013, the landowners asked the county to take responsibility for the damage from the pipe's failure, and the county refused. And the county did not take responsibility to repair the pipe in response to the landowners' 2013 ante litem notice. The landowners presented no evidence that the county used the pipe "claiming in good faith the right to do so." *Halpern*, 259 Ga. at 265 (1).

A claim of right may be presumed from the assertion of dominion and the erection of valuable improvements, but only in the "absence of evidence to the contrary." *Chance v. Ga. Power Co.*, 238 Ga. 397, 398 (1) (233 SE2d 365) (1977). In this case, the county erected no improvements to the pipe, and there is evidence that the county disclaimed any right to the pipe. The landowners have not met their burden of showing that the county obtained a prescriptive easement in their pipe.

The evidence showed, at best, a trespass, which "can never ripen into prescriptive title." *Halpern*, 259 Ga. at 265 (1).

16

"Prescriptive rights are to be strictly construed." *Land USA, LLC v. Ga. Power Co.*, 297 Ga. 237, 242 (1) (773 SE2d 236) (2015) (citation and punctuation omitted). The landowners have not shown that any use of their pipe by the county was under a claim of right as required by OCGA § 44-5-161 (4). So we reverse the trial court's judgment to the extent it was based on a finding of adverse possession separate from the claims for inverse condemnation, trespass, nuisance, and negligence addressed in Division 2.

4. *Damages*

The county argues that the damages award is erroneous because the landowners proved special damages and not the diminution of the property's market value. We agree that the damages award is erroneous for this reason (as well as for the reason that it included damages for harms incurred after the presentation of the ante litem notice as discussed in Division 2 (c), supra).

A county can only be held liable for a nuisance that rises to the level of a taking of property under the Georgia Constitution. *Pribeagu v. Gwinnett County*, 336 Ga. App. 753, 754 (785 SE2d 567) (2016). The measure of damages for such a nuisance is the same as the measure of damages recoverable in an inverse condemnation proceeding: "the market value of the property actually taken [and] the consequential

17

damage that will naturally and proximately arise to the remainder of the owner's property . . . ." Id. at 755 (citation and punctuation omitted). See also *DeKalb County v. Orwig*, 261 Ga. 137, 139 (3) (402 SE2d 513) (1991) ("the measure of damages is the actual depreciation in market value of the premises . . . and the effect on the property") (citation and punctuation omitted).

The trial court awarded the landowners $130,824.04 in damages, which equaled the $118,444.41 cost of making repairs in 2013 and 2016, plus $12,379.63 in interest on the loan taken out to pay for the repairs. But cost of repair is not a separate element of damage, and evidence of the cost of repair only "may be considered [as] a factor in establishing the reduced fair market value of the remaining property after the taking. . . . [W]here evidence of cost of repair plays no part in the appraiser's calculation of the fair market value of the property, such evidence does not support a claim of damages in a condemnation proceeding." *Pribeagu*, 336 Ga. App. at 758 (2) (citations and punctuation omitted).

The cases upon which the landowners rely are inapposite. None of them addressed whether the cost of repair is a proper measure of damages in an action against a county for a nuisance that amounts to an inverse condemnation. See *Ga. Northeastern R. v. Lusk*, 277 Ga. 245 (587 SE2d 643) (2003); *Rheberg v. Grady*

18

*County*, 27 Ga. App. 578 (109 SE 542) (1921); *Outfront Media, LLC v. City of Sandy Springs*, 356 Ga. App. 405 (847 SE2d 597) (2020); *DeKalb County v. Heath*, 331 Ga. App. 179 (770 SE2d 269) (2015); *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*, 152 Ga. App. 259 (262 SE2d 554) (1979).

So the trial court erred in awarding cost of repair as damages.

5. *OCGA § 13-6-11 attorney fees*

The county argues that the trial court erred by awarding the landowners attorney fees under OCGA § 13-6-11 because the court based the award on the erroneous finding that no bona fide controversy existed. We agree.

"[W]here the plaintiff has specially pleaded and has made prayer [for the expenses of litigation] and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the [factfinder] may allow them." OCGA § 13-6-11. But the existence of a bona fide controversy between the parties, "whether of law or fact, on liability or amount of damages, or on any comparable issue," precludes an award of attorney fees premised on stubborn litigiousness. *Horton v. Dennis*, 325 Ga. App. 212, 216 (750 SE2d 493) (2013) (citation and punctuation omitted). And "[a] mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness." *Dimambro Northend Assocs.*

19

*v. Williams*, 169 Ga. App. 219, 225 (6) (312 SE2d 386) (1983) (citations and punctuation omitted) (where a bona fide controversy existed; the evidence did not demand a verdict for either side; and there was no evidence of bad faith, stubborn litigiousness, or unnecessary trouble and expense, an award for attorney fees under OCGA § 13-6-11 was not supported).

"We will affirm an award under OCGA § 13-6-11 if there is any evidence to support it." *Vol Repairs II v. Knighten*, 322 Ga. App. 416, 419 (1) (745 SE2d 673) (2013). "Although whether a bona fide controversy exists is *normally* a question for the jury to decide, we have also repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness. . . ." *Horton*, supra, 325 Ga. App. at 217 (citation omitted; emphasis in original).

The trial court erred by finding that no bona fide controversy exists because a bona fide controversy of law existed between the parties. Among other things, the county relied on Supreme Court authority, *Forrister*, 289 Ga. at 334, to reject the landowners' claims on the ground that they were untimely under the ante litem statute and the statute of limitation. Only recently has the court clarified that this authority is "imprecise." *Wise Business Forms*, __ Ga. at __. "Because a bona fide controversy

20

clearly exists between the parties," the trial court erred in awarding the landowners OCGA § 13-6-11 attorney fees. *Nash v. Reed*, 349 Ga. App. 381 (2) (825 SE2d 853) (2019).

6. *Injunction*

The county argues that the trial court erred by entering an injunction. We disagree.

"The decision whether to grant an injunction rests in the sound discretion of the judge, according to the circumstances of each case. . . [We] will not disturb the injunction the trial court has fashioned unless there was a manifest abuse of discretion." *Menzies v. Hall*, 281 Ga. 223, 225 (2) (637 SE2d 415) (2006) (citations and punctuation omitted). The trial court "permanently enjoined [the county] from maintaining a defective stormwater drainage system that causes damage to [the landowners'] property."

The county argues that based on its other claims of error, the landowners are not entitled to any relief so the court erred in entering the injunction. But as we detail above, the county has not established that the landowners are not entitled to any relief whatsoever, so this argument is not a basis for reversing the injunction.

The county argues that because the evidence did not show that the storm water system is defective, the court erred by enjoining it from maintaining a defective storm water system. But one of the landowners' witnesses testified that the impervious surface area in the upstream basin has increased because of the construction of houses, subdivisions, commercial areas, and road improvements, but the county has not constructed any significant storm water management infrastructure in the upstream basin to mitigate peak flow caused by the development. This evidence supports the court's injunction "enjoining the county from maintaining a defective drainage system. . . ." *Columbia County v. Doolittle*, 270 Ga. 490, 493 (3) (512 SE2d 236) (1999). But see *Dept. of Transp. v. Mixon*, 312 Ga. 548, 564 (2) (e) (864 SE2d 67) (2021) ("Although [plaintiff] seeks a permanent injunction in order to prevent future nuisance and continual trespass from being inflicted upon her property, her complaint contains no allegation that her damages claim does not provide her an adequate remedy for such a tort.") (punctuation omitted).

7. *Conclusion*

In sum, we hold that the landowners' claims are not barred by the running of the statute of limitation, and we affirm the trial court's ruling on the issue. We hold that the landowners' ante litem notice was timely for nuisance damage incurred

within the 12-month period preceding its presentation, but that the landowners could not recover damages incurred after presentation of the notice, so we affirm in part and reverse in part the trial court's ruling on the issue of the ante litem notice. We hold that the landowners are not entitled to relief on their claim of a prescriptive easement by adverse possession, and we reverse the trial court's ruling on the issue.

We hold that the trial court erred by awarding damages based on the cost of repair instead of the market value of the property actually taken and the consequential damage to the remainder of the landowners' property; and that the court erred to the extent she awarded damages for harm incurred after the landowners' presentation of their ante litem notice. So we vacate the damages award and remand for further proceedings. We also hold that the trial court erred in awarding OCGA § 13-6-11 attorney fees, and we reverse that award. Finally, we hold that the trial court did not err in entering an injunction, and we affirm the trial court's grant of an injunction.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded. Brown and Markle, JJ., concur*.